[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 230.]

THE STATE OF OHIO, APPELLEE, *v.* SHEPPARD, APPELLANT.

[Cite as *State v. Sheppard*, 1998-Ohio-323.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 97-1474—Submitted September 15, 1998—Decided December 30, 1998.)

APPEAL from the Court of Appeals for Hamilton County, Nos. C-950402 and C-950744.

————————————

{¶ 1} On August 27, 1994, Bobby T. Sheppard, defendant-appellant, was indicted for the August 19, 1994 aggravated robbery and murder of fifty-six-year-old Dennis Willhide.

{¶ 2} Willhide owned the C & D Drive-thru beverage store, located in Cincinnati. On August 19, 1994, Willhide and an employee, Darren Cromwell, were working at the store. Approximately one-half hour before closing time, appellant and his fourteen-year-old accomplice, Antwan (Cory) Little, ran into the front entrance. Appellant wore dark clothing and a dark mask and had a gun. Little wore a white t-shirt pulled over his head. Little went to the cash register and tried to open it. Appellant grabbed Willhide and forced him down to the floor by the cash register. Little removed the money from the register then ran out the door. Appellant remained a few seconds longer and fired a single gunshot to the back of Willhide's head. He, too, then ran out the exit door.

{¶ 3} In the meantime, Cromwell had escaped out the back door. He ran down the street and tried to flag down some cars. He managed to stop a taxicab. He entered the cab and asked the driver to call the police. The driver called his dispatcher and drove Cromwell back to the drive-through. While in the cab, Cromwell heard one gunshot and then saw appellant and Little run from the store.

**{¶ 4}** Cromwell went back into the drive-through. He walked behind the register and saw Willhide lying face down on the floor. He ordered people out of the store (several cars had entered while Cromwell was gone). Cromwell called the police.

**{¶ 5}** Police officer Daniel M. Nickum and his tracking dog, Luke, were summoned to the scene. Luke was taken to the area where Cromwell had last observed appellant and Little. He picked up their scent and followed it to appellant's nearby house. Nickum contacted more police cars, and appellant and Little were immediately arrested. The residence was secured, and a search warrant was obtained.

**{¶ 6}** Inside appellant's home, the police found $114 (three $20 bills, two $5 bills, one $2 bill, and forty-one $1 bills) partly stuffed into a plastic bag and partly lying loose on a kitchen closet floor. In a bedroom near the kitchen, the police uncovered a dark blue hooded sweatshirt and a black mask under a bed.

**{¶ 7}** The next day, with the assistance of Deangelo Graham, a fifteen-year-old friend of appellant and Little, the police uncovered $390 in currency and a chrome-plated .22 caliber semiautomatic pistol containing six bullets from a neighbor's bush next to appellant's house.

**{¶ 8}** The gun was test-fired and found to be operable. An expert testified that a cartridge casing found on the drive-through floor had been fired from this weapon. In addition, it was determined that the bullet retrieved from Willhide's brain was consistent with the bullets test-fired from the gun.

**{¶ 9}** Appellant made several statements. Shortly after he was arrested and read his *Miranda* rights, but before he was told the reason for the arrest, he announced that he "didn't do a robbery." The second statement was made at the police station. In this version, appellant explained that Little and he had gone to the drive-through to purchase a forty-ounce bottle of beer. Willhide would not sell it to him because he was too young. Willhide then pulled out "something."

Appellant thought it might be a gun, so he shot Willhide once in the head as Willhide turned away.

{¶ 10} Appellant changed his story when challenged by police. He gave an accurate account of what had occurred as evidenced on the surveillance tape. In his confession, he said that he "did not mean to shoot" Willhide and that he wasn't "in [his] right mind." But appellant admitted that he shot Willhide because he did not want Willhide to identify him. Appellant gave police $89, hidden in his shoe, which he said was proceeds from the robbery. Thus, together with the $114 from appellant's kitchen and the $390 from the neighbor's bush, the police recovered a total of $593.

{¶ 11} The fifteen-year-old acquaintance, Deangelo Graham, related three conversations that he had with appellant. The first conversation took place approximately two to three months before August 19. The second occurred just a few days before the robbery and murder. The last conversation happened just minutes before the tragedy. Appellant related his intent to rob the drive-through and a BP station. Appellant wondered what it would feel like to shoot someone. In the second conversation, appellant stated that he might have to kill the man if he did not cooperate. In the last conversation, appellant was convincing a reluctant Little to go through with the plan. After the last conversation, Graham saw appellant and Little walk into the store and saw appellant grab Willhide and force him to the ground. Graham then walked away. Graham also described the gun appellant had purchased just a few days before on the streets. The description matched the gun offered into evidence.

{¶ 12} The jury found appellant guilty as charged of aggravated robbery and aggravated murder with gun specifications. He was also convicted of death penalty specifications for murder to escape detection or apprehension for another offense, R.C. 2929.04(A)(3), and murder in the course of a robbery, R.C. 2929.04(A)(7). The jury recommended death. The trial court sentenced appellant

to imprisonment for the aggravated robbery and the gun specifications, and to death for the aggravated murder. The court of appeals affirmed.

{¶ 13} The cause is now before this court upon an appeal as of right.

_____

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *William E. Breyer*, Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle* and *Chuck R. Stidham*, for appellant.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 14} Appellant presents twenty-seven propositions of law for our consideration. (See Appendix, *infra.*) We have independently considered each proposition and have reviewed the death penalty sentence for appropriateness and proportionality. However, we summarily reject arguments that either have not been preserved, involve settled issues, or are cured by our independent review. See, *e.g., State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus; *State v. Henness* (1997), 79 Ohio St.3d 53, 56, 679 N.E.2d 686, 691. Thus, we address only those issues that warrant discussion. Accordingly, upon review, and for the following reasons, we uphold appellant's convictions and sentences, including the death sentence.

**Juror Misconduct**

{¶ 15} In Proposition of Law No. 1, appellant argues that he is entitled to reversal of the death sentence and imposition of a life sentence because of the misconduct of one juror during the penalty phase. In Proposition of Law No. 2, appellant contends that the trial court improperly considered a psychologist's affidavit in considering this issue. We reject both arguments.

{¶ 16} After the jury had recommended the death penalty and had been discharged, the state learned that one juror had independently contacted a psychologist for a definition of paranoid schizophrenia. The contact was made

before jury deliberations in the penalty phase. The court conducted a brief hearing and examined the juror. The juror testified that the psychologist gave him a "very, boiled down, short" definition that "those kind of people [paranoid schizophrenics] just are not really in touch with real[i]ty." The juror testified that this definition did not differ from what he had heard at trial, and it did not affect the deliberations in any way. The juror did not share this information with other jurors. Following appellant's motion for a new trial based upon juror misconduct, the state submitted an affidavit from the psychologist in question, stating that the brief definition she had given to the juror was totally consistent with defense testimony.

{¶ 17} The juror's decision to ask his psychologist friend for an outside opinion constitutes juror misconduct. "Due process means a jury capable and willing to decide the case solely on the evidence before it[.]" *Smith v. Phillips* (1982), 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78, 86. "In a criminal case, any private communication, contact, or tampering * * * with a juror during a trial about the matter pending before the jury is * * * deemed presumptively prejudicial[.]" *Remmer v. United States* (1954), 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656. But "[t]he presumption is not conclusive." *Id.* In fact, *Smith v. Phillips* modified the concept of presumed prejudice and required the party complaining about juror misconduct to prove prejudice. 455 U.S. at 215-217, 102 S.Ct. at 945, 71 L.Ed.2d at 85-86. See *United States v. Zelinka* (C.A.6, 1988), 862 F.2d 92, 95; *United States v. Sylvester* (C.A.5, 1998), 143 F.3d 923, 933-934.

{¶ 18} Additionally, Ohio courts have a long-standing rule "not [to] reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." *State v. Hipkins* (1982), 69 Ohio St.2d 80, 83, 23 O.O.3d 123, 125, 430 N.E.2d 943, 946. Accord *State v. Keith* (1997), 79 Ohio St.3d 514, 526, 684 N.E.2d 47, 60. The defense must establish that an outside communication "biased the juror." *Id.*, citing *State v. Phillips* (1995), 74 Ohio St.3d 72, 88-89, 656

N.E.2d 643, 661. Under Crim.R. 33(A)(2), juror misconduct must materially affect an accused's substantial rights to justify a new trial. See, also, R.C. 2945.79(B).

{¶ 19} Here the trial court determined that appellant suffered no harm or prejudice as a result of the juror's brief conversation with the psychologist. A court may determine that a juror's impartiality has remained unaffected based upon that juror's testimony. *Smith v. Phillips*, 455 U.S. at 215, 102 S.Ct. at 945, 71 L.Ed.2d at 85. In fact, the juror's brief conversation clearly did not prejudice appellant because the psychologist's comments reinforced expert defense testimony. Thus, if the juror was influenced at all, he could have been influenced only in appellant's favor, and the other jurors, unaware of the conversation, could not have been affected at all. Accordingly, appellant has not established that any prejudice resulted from this juror misconduct. Crim.R. 33(A)(2); *Keith*, 79 Ohio St.3d at 526, 684 N.E.2d at 60; *Hipkins*, 69 Ohio St.2d at 83, 23 O.O.3d at 125, 430 N.E.2d at 946.

{¶ 20} In Proposition of Law No. 2, appellant argues that the psychologist's affidavit cannot be considered under Evid.R. 606(B). Evid.R. 606(B) concerns limits on evidence about a jury's deliberations. The rule restricts a juror's competence to testify about "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him" with respect to the verdict "or concerning his mental processes in connection therewith." However, the rule permits a juror to testify regarding extraneous prejudicial information or improper outside influence, but only after some outside evidence (evidence *aliunde*) of that act or event has been presented.

{¶ 21} Appellant argues that the affidavit was not admissible under Evid.R. 606(B) because the improper contact did not occur during deliberations. But the rule makes no such requirement. Outside evidence on improper influence is admissible without regard to when the influence occurred.

{¶ 22} In this case, the trial court properly conducted a hearing and permitted the juror to testify. Evid.R. 606(B) recognizes a juror's competence to testify about any outside influence "after some outside evidence of that act or event has been presented." Trial courts are given broad discretion in dealing with outside contacts. *Keith*, 79 Ohio St.3d at 526-527, 684 N.E.2d at 60; *Phillips,* 74 Ohio St.3d at 89, 656 N.E.2d at 661.

## Jury Selection Issues

{¶ 23} **Batson claims.** In Proposition of Law No. 21, appellant contends that the prosecution peremptorily excused jurors on the basis of their race. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, held that the Fourteenth Amendment's Equal Protection Clause precludes purposeful discrimination by the state in the exercise of its peremptory challenges so as to exclude members of minority groups from petit juries. See, also, *State v. Hernandez* (1992), 63 Ohio St.3d 577, 581, 589 N.E.2d 1310, 1313. If the defendant makes a prima facie case of discrimination, the state must provide a neutral explanation. *Id.* at 582, 589 N.E.2d at 1313.

{¶ 24} Appellant claims that the state's peremptory challenges against two jurors were racially motivated. Yet, contrary to this claim, the facts and any other relevant circumstances did not establish a prima facie case because they did not raise an inference that the prosecutor used the challenges for racial reasons. See *id.* at 582, 589 N.E.2d at 1313. In fact, one African-American replaced a white juror challenged by the state. Additionally, when these challenges were questioned by the defense on *Batson* grounds, the state explained the two questioned challenges. The state asserted that it had excused juror number one because she did not think that she could sign a death verdict. The state excused juror number thirty-two because of her death penalty views and because she was a friend of accomplice Little's family.

{¶ 25} Because of the state's race-neutral explanations, the trial court was not required to interfere with the state's peremptory challenges. Cf. *State v. Moore* (1998), 81 Ohio St.3d 22, 28-29, 689 N.E.2d 1, 9-10. Appellant's *Batson* claims lack merit.

{¶ 26} **Denial of challenge for cause.** In Proposition of Law No. 22, appellant contends that the trial court improperly denied his challenge for cause of prospective juror Matthews. Matthews had formerly lived in the neighborhood where appellant lived and the murder occurred. Matthews was acquainted with the victim, had shopped in the C & D Drive-thru a few times, and had seen Sheppard around but did not know him. Nonetheless, Matthews assured the trial court that he would be fair and impartial and would decide the issues based upon the facts. Matthews never sat as a juror because of a peremptory challenge by appellant.

{¶ 27} Fairness requires impartial, indifferent jurors. Yet jurors need not be totally ignorant of the facts and issues involved. *Murphy v. Florida* (1975), 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594-595. Whether a prospective juror knew the victim of an offense or had previously seen the accused is not, *per se*, a basis for dismissal for cause. See Crim.R. 24(B). The trial court has discretion in determining a juror's ability to be impartial. *State v. Williams* (1983), 6 Ohio St.3d 281, 288, 6 OBR 345, 351, 452 N.E.2d 1323, 1331.

{¶ 28} Here, caution suggests sustaining the challenge, but we find that the trial court's failure to do so was not an abuse of discretion. Matthews unequivocally stated his intention to be impartial and decide the case only on the facts. "[D]eference must be paid to the trial judge who sees and hears the juror." *Wainwright*, 469 U.S. at 426, 105 S.Ct. at 853, 83 L.Ed.2d at 853.

### Trial Phase Issues

{¶ 29} **Admission of appellant's pretrial statements.** In Proposition of Law No. 12, appellant contends that his pretrial statement was inadmissible because police never informed him that he was "capitally eligible" for the offense he

committed. However, police officers are not required to inform a suspect that he is potentially eligible for a death sentence prior to obtaining a valid waiver of the right to counsel. *Garner*, 74 Ohio St.3d at 60, 656 N.E.2d at 635. To impose such a requirement would force the police to discuss penalties and would complicate understanding of *Miranda* rights, neither of which makes sense. See, *e.g., State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965, 973. This proposition lacks merit.

{¶ 30} **Search of residence.** In Proposition of Law No. 13, appellant makes a generalized complaint about the search of his residence and the seizure of the items found therein. However, contrary to appellant's claims, the evidence shows that police did not enter the residence until they had secured a warrant. Second, neither appellant's name nor the name of the owner of the house needed to be on the warrant, since the warrant described exactly the place to be searched. 2 LaFave, Search and Seizure (3 Ed.1996), Section 3.1. Finally, adequate evidence supported the issuance of the warrant. The affidavit states that police were investigating a homicide/robbery at the C & D Drive-thru, that a witness saw two males enter the drive-through, heard a gunshot, and observed them running away, and that further investigation led the police to appellant's home. When a warrant has been issued, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. This determination is accorded great deference. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus. We reject this proposition of law.

{¶ 31} **Instruction on involuntary manslaughter.** In Proposition of Law No. 14, appellant argues that the trial court erred in refusing to instruct on the lesser included offense of involuntary manslaughter. This issue has been discussed many times in similar cases. *State v. Raglin* (1998), 83 Ohio St.3d 253, 257, 699 N.E.2d 482, 487. The rule is that " '[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is

required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.' " *Id.* at 257, 699 N.E.2d at 488, quoting *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. Here, under any reasonable view of the evidence, appellant's killing of Willhide was purposeful, as the location of the victim's gunshot wound could imply only a purposeful killing. See *State v. Palmer* (1997), 80 Ohio St.3d 543, 687 N.E.2d 685.

{¶ 32} In his pretrial confession, appellant said that he hadn't entered the drive-through with the intention of killing anyone. He said that after accomplice Little left, "I just shot [Willhide]." When asked why, appellant said, "I don't know. * * * I [wasn't] in my right mind[.] * * * I don't know why I shot [him]; I [didn't] have no reason." When asked if he shot him so Willhide could not identify him, appellant replied, "Yeah. Yeah, [that's] the main reason, but I * * * didn't mean to shoot [him]." When asked if the gun went off accidentally, appellant said "no" and repeated, "I did not mean to shoot [him]." Later he said, "[Y]ou could say it was accidentally but * * * I don't know." Thus, appellant's pretrial statement never explicitly claims that the killing was an accident but suggests instead that the killing was not planned.

{¶ 33} Moreover, the other facts and circumstances preclude any reasonable basis for finding that the killing was not purposeful. Appellant's shot, fired from close range, went directly to the back of Willhide's head, indicating appellant's intent to kill. Appellant's semiautomatic handgun required a seven-pound pull to fire the weapon. The video shows that Willhide was cooperative and did nothing to induce panic or confusion in his killer, since he neither resisted nor struggled before he was shot. Finally, even before the robbery, appellant had speculated with his friends what it would be like to shoot someone.

{¶ 34} Thus, no reasonable jury could have both rejected a finding of guilty on the charged crime and returned a verdict of guilty on the lesser included offense

of involuntary manslaughter. We find that the trial court properly rejected appellant's request for an involuntary manslaughter instruction.

{¶ 35} **Sufficiency and weight of the evidence.** In Proposition of Law No. 15, appellant claims that the state failed to prove that he purposely killed Willhide. In Proposition of Law No. 16, appellant argues that the verdict was against the manifest weight of the evidence. We disagree. The evidence sufficiently and overwhelmingly supported the finding that appellant purposely killed his victim.

### Penalty Phase Issues

{¶ 36} **Exclusion of evidence.** In Proposition of Law No. 3, appellant argues that the trial court erred by denying the admission of mitigating evidence offered at the penalty phase. The mitigation evidence excluded was an excerpt from a learned treatise proffered to bolster the testimony of appellant's expert witness, Dr. Jeffrey Smalldon, a clinical psychologist.

{¶ 37} R.C. 2929.04(C) grants wide latitude to the defendant in the presentation of mitigating evidence during death penalty hearings. Also, hearsay rules cannot be used to defeat the ends of justice. *State v. Landrum* (1990), 53 Ohio St.3d 107, 114, 559 N.E.2d 710, 720, citing *Green v. Georgia* (1979), 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738. Yet the Rules of Evidence still apply to penalty hearings. *State v. Williams* (1995), 73 Ohio St.3d 153, 159, 652 N.E.2d 721, 727-728; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 190, 15 OBR 311, 333, 473 N.E.2d 264, 289. This type of evidence is impermissible. See *Piotrowski v. Corey Hosp.* (1961), 172 Ohio St. 61, 69, 15 O.O.2d 126, 130, 173 N.E.2d 355, 360; *Stinson v. England* (1994), 69 Ohio St.3d 451, 457-458, 633 N.E.2d 532, 539.

{¶ 38} However, the United States Supreme Court has carved out an exception to evidentiary rules for mitigation evidence in extreme circumstances when its exclusion would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738.

**{¶ 39}** In *Green*, the trial court was held to have wrongfully excluded, as hearsay, testimony from a witness that a co-defendant (Moore) had confided to him that Moore had killed the victim, shooting her twice after ordering Green to run an errand. The Supreme Court reversed, holding that the evidence was highly relevant to one of the mitigation factors. Here, the excluded evidence was intended only to bolster a statement already made by Dr. Smalldon, that a connection existed between head injuries and psychotic conditions. Moreover, Smalldon himself did not accept the text as authoritative in all respects, although he described it as "one of the most widely respected and most frequently cited texts in this field."

**{¶ 40}** The book chapter excluded here does not compare in any way to the testimony "highly relevant to a critical issue" excluded in *Green v. Georgia.* We reject this proposition of law.

**{¶ 41} Prosecutorial misconduct.** In Proposition of Law No. 4, appellant makes several arguments. First, appellant cites *State v. Gumm* (1995), 73 Ohio St.3d 413, 653 N.E.2d 253, and *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, and argues that the prosecutor is restricted from making certain comments on the underlying facts of an aggravated murder. We disagree with appellant's analysis. *Wogenstahl* recognizes that evidence relating to the facts of the aggravating circumstances must be considered in the penalty determination. *Id.* at 355, 662 N.E.2d at 321. Although, according to *Wogenstahl*, paragraph two of the syllabus, prosecutors cannot argue that the nature and circumstances of an offense are aggravating circumstances, the facts and circumstances of the offense must be examined to determine whether they are mitigating. R.C. 2929.04(B). Thus, a prosecutor may legitimately refer to the nature and circumstances of the offense, both to refute any suggestion that they are mitigating and to explain why the specified aggravating circumstance outweigh mitigating factors. *State v. Combs* (1991), 62 Ohio St.3d 278, 283, 581 N.E.2d 1071, 1077.

**{¶ 42}** Here, for the most part, the prosecutor's sentencing argument was restrained and straightforward and dealt reasonably with the facts of the crime. The two speculative comments on what Willhide was thinking at the moment he was shot were not so egregious as to constitute prejudicial error.

**{¶ 43}** Although he overstated the evidence, the prosecutor did not commit grievous error by asserting that appellant "conspired to rob other stores prior to this robbery." The guilt phase evidence did show that appellant had purchased a firearm and had said that he planned to rob a BP station.

**{¶ 44}** Appellant also contends that error occurred when the prosecutor was permitted to replay the crime scene videotape during the penalty phase. Undoubtedly, the tape served to emphasize the facts of the murder as well as the facts of the aggravating circumstance. However, the video is an objective and impartial depiction of exactly what occurred during the crime and of the aggravating circumstance, and is a better witness than any other source. Both the facts of the offense as well as those of the aggravating circumstance are relevant in the weighing process. *Gumm* and *Wogenstahl, supra.*

**{¶ 45}** More troublesome, however, is the prosecutor's argument asserting that the defense was underhanded by not entering a plea of not guilty by reason of insanity. The appellant was free to enter whatever plea he wished and cannot be chastised for doing so. *Landrum*, 53 Ohio St.3d at 110, 559 N.E.2d at 717. Also, Dr. Smalldon's testimony setting forth an R.C. 2929.04(B)(3) mitigating factor did not justify an insanity plea, nor was that testimony admissible in the trial phase. *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, paragraph one of the syllabus. Nonetheless, this court's independent sentence assessment cures the effect of this sentencing error. *Landrum*, 53 Ohio St.3d at 124-126, 559 N.E.2d at 729-730.

**Independent Sentence Evaluation**

**{¶ 46}** Having discussed some and considered all of appellant's propositions of law, we now independently review the death sentence for appropriateness and proportionality. We find that the two aggravating circumstances appellant was found guilty of committing were proven beyond a reasonable doubt.

**{¶ 47}** Appellant's mother, Dolores Sheppard, and oldest sister, Alberta Sheppard, testified in mitigation. They described appellant as a normal boy who grew up with two sisters and two brothers in a poor but loving family. Appellant's father died when appellant was four years old. Because of physical illness and disability, Dolores was unable to work, and the family struggled financially. Appellant was a good student and was active in football and wrestling. After a September 1993 automobile accident, in which appellant suffered head injuries, his behavior changed dramatically. His grades suffered, he lost interest in sports and school, and he dropped out in his junior year. Because of his changed behavior, Dolores tried to get him some assistance, but appellant refused it. Dolores asserted that eight out of seventeen members of her mother's family had mental problems. Dolores's brother, Darryl, was repeatedly hospitalized as a schizophrenic.

**{¶ 48}** Gwendolyn Bradbury, a Butler County social worker, worked with the family from 1981 until 1992, seeing them at least weekly until the family moved to Hamilton County in 1992. Bradbury corroborated Dolores's testimony as to the family struggles and described the family as religious and regular churchgoers. Bradbury thought appellant was a shy, reserved boy with good manners. After the accident, he did not appear to be the same boy she knew growing up.

**{¶ 49}** Dr. Jeffrey Smalldon, a clinical psychologist, performed a comprehensive evaluation of appellant and concluded that he was a paranoid schizophrenic. Dr. Smalldon based his conclusion on seven interviews with appellant over an eight-month period, extensive psychological testing, discussions

with family members, and his review of appellant's background. Dr. Smalldon found that appellant was very withdrawn, was difficult to engage in conversation, and exhibited delusional thinking and behavior. In his opinion, appellant was not faking mental illness, since he was terrified of being seen as mentally ill like his Uncle Darryl. Dr. Smalldon believed that the September 1993 automobile accident in which appellant suffered minor head injuries may have precipitated the onset of this latent mental illness.

{¶ 50} Dr. Smalldon believed that the family history supports his diagnosis of paranoid schizophrenia, which has a genetic component and frequently recurs in families. Dolores has twice been hospitalized for serious depression, appellant's sister Alberta has been treated for serious depression, and his sister Bridgette is autistic. Appellant's Uncle Darryl was repeatedly hospitalized for paranoid schizophrenia, a fact well documented. Dr. Smalldon testified that two great aunts and a great uncle have also had extended psychiatric care and hospitalization, and several first and second cousins have histories of mental problems. Dr. Smalldon admitted that appellant's family had relayed much of this family history to him, yet he had reviewed some medical records.

{¶ 51} In Dr. Smalldon's view, appellant's severe mental illness does not qualify him for an insanity defense, but his illness would have substantially impaired his reasoning, insight, and ability to conform his conduct to the law. Thus, in Dr. Smalldon's opinion, appellant's mental illness substantially compromised his ability to know that what he was doing was criminally wrong or to conform his behavior to the law. Dr. Smalldon acknowledged that appellant had never been treated for mental illness, but paranoid schizophrenia usually does not appear until the late teens or early twenties. Finally, Dr. Smalldon did not find that appellant had suffered from any physical or emotional abuse while growing up, although appellant's father's death was a "very significant event." Nor did Dr. Smalldon

feel that appellant had a history of drug or alcohol abuse, although he occasionally used marijuana and drank.

{¶ 52} According to Dr. Smalldon, symptoms of paranoid schizophrenia include profound alienation from the environment and from other people, difficulty in appreciating the sequence of events, searching for structure, feelings of wariness, vulnerability, and helplessness, a decline in personal grooming, and a deep lack of trust in others.

{¶ 53} **Sentence evaluation.** The nature and circumstances of the offense offer no mitigating features. Appellant's deliberate murder of Willhide was unprovoked, brutal, and tragic.

{¶ 54} Appellant's history, character and background offer minimal mitigating features. Although appellant's father died when he was four, and his mother struggled with her own illnesses and limited financial resources, the family was religious and a close, loving family. The family received help from a social worker, and this social worker was extremely close to the family, visiting at least weekly for more than ten years. Appellant was described as a well-behaved boy with good manners. Generally he received good grades in school and was active in school sports. Because the mother was concerned about bad influences, she moved the family back to Cincinnati in 1992. We find that appellant's family background offers little by way of mitigation. See, *e.g., State v. Wilson,* 74 Ohio St.3d at 400-401, 659 N.E.2d at 310.

{¶ 55} Appellant's age of eighteen also offers little mitigation. "At the time of the murder, appellant was a man of full legal age. He was an adult with all of the privileges and responsibilities of an adult." *State v. Slagle* (1992), 65 Ohio St.3d 597, 613, 605 N.E.2d 916, 931. However, his lack of a significant criminal history is entitled to some weight.

{¶ 56} R.C. 2929.04(B)(3) sets forth the following mitigation factor: "[w]hether, at the time of committing the offense, the offender, because of a mental

disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." Dr. Smalldon believed that the appellant, due to a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform it to the requirements of the law. We give this opinion some weight.

{¶ 57} However, weighing the evidence presented in mitigation against the two aggravating circumstances, we find that the aggravating circumstances outweigh the mitigating factors. We find this beyond a reasonable doubt.

{¶ 58} Finally, we find the death penalty proportionate when compared with other cases of felony murder during an aggravated robbery. See, *e.g., State v. Raglin*, 83 Ohio St.3d 253, 699 N.E.2d 482; *State v. Hill,* 73 Ohio St.3d 433, 653 N.E.2d 271; *State v. Benge* (1996), 75 Ohio St.3d 136, 661 N.E.2d 1019.

{¶ 59} We affirm appellant's convictions and sentences, including the sentence of death.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

APPENDIX

**{¶ 60}** "Proposition of Law No. 1: Where a juror, during the penalty phase of a capital trial in which the defense offers expert testimony that the defendant suffers from a mental disease or defect, contacts a nontestifying psychologist outside of the court proceedings to acquire information with respect to the defense expert's diagnosis of the defendant, and thereafter votes with other jurors to impose the death sentence on the defendant, the defendant's constitutional rights to due process, to a fair and impartial jury, and to be free from cruel and unusual punishment have been violated, and he is entitled to be resentenced to life imprisonment."

**{¶ 61}** "Proposition of Law No. 2: Evidence in the form of affidavits of a non-testifying psychologist contacted by a juror during the penalty phase of a capital prosecution is not evidence *aliunde* such as to permit the trial court, considering a motion for new trial and/or to resentence the defendant, to inquire as to the effect of such contact upon the deliberations of the errant juror, or any other juror."

**{¶ 62}** "Proposition of Law No. 3: At the penalty phase of an aggravated murder prosecution, the trial court is required to extend considerable latitude to the defense in the admission of evidence with respect to mitigation of the death penalty, and where the trial court excludes relevant, probative evidence of mitigation, by granting an objection which was never made, and which was expressly disavowed by the prosecutor, and which evidence is proffered into the record by the defense, the rights of the accused to due process of law under the Fourteenth Amendment, and to be free from cruel and unusual punishment under the Eighth Amendment, and under Art. I Secs. 9 and 16, O. Const., have been violated, the death sentence imposed is unlawful and unconstitutional, and must be reversed, and the accused resentenced to life imprisonment."

{¶ 63} "Proposition of Law No. 4: Egregious misconduct by the prosecutor in the penalty phase of capital proceedings requires reversal, and where the prosecutor's final argument for death argues nonstatutory aggravating factors, argues 'facts' outside the evidence, attacks the relevance of evidence admitted by the court, contains inflammatory remarks and invective against the accused and his counsel, a death sentence based on a jury verdict following such arguments violates due process and the Eighth Amendment [to] the United States Constitution, and their counterparts in the Ohio Constitution."

{¶ 64} "Proposition of Law No. 5: Specifications under R.C. 2929.04(A)(3) and (A)(7) are duplicative, and must be merged prior to sentencing proceedings, upon motion of the accused. The failure of the trial court, *sua sponte*, to merge such specifications constitutes a violation of the rights of the accused under the United States Constitution and the Ohio Constitution as well where the death sentence is imposed thereafter."

{¶ 65} "Proposition of Law No. 6: The power conferred by R.C. 2929.05 upon appellate courts to review aggravating and mitigating factors, and to determine the appropriateness of a given death sentence, is subordinate to the right of the accused to trial by jury under Art. I Secs. 5 and 10 of the Ohio Constitution."

{¶ 66} "Proposition of Law No. 7: Unless it can fairly be held beyond a reasonable doubt that penalty phase error in a capital trial had no effect upon the jury's sentencing verdict, appellate courts are rendered powerless by the right to trial by jury set forth in the Ohio Constitution, Art. I Secs. 5 and 10, from purporting to 'cure' the error and to affirm the death sentence; any such affirmance violates the right of the accused to trial by jury, and the death sentence must be vacated and set aside."

{¶ 67} "Proposition of Law No. 8: The affirmance of a death sentence by an appellate court which has reweighed the aggravating and mitigating factors absent duplicative and improper aggravating circumstances originally considered

and weighed by the jury in recommending the death sentence, constitutes a violation of the right of the accused under the Eighth Amendment to have the death sentence imposed only after the proper procedures have been followed under the state scheme for imposing the death sentence, and also constitutes a violation of the right to due process of law in that such appellate reweighing abrogates the liberty interest created by state law to jury participation in the capital sentencing process."

{¶ 68} "Proposition of Law No. 9: It is impermissible for a sentencer in a capital case to weigh the nature and circumstances of the offense as an aggravating circumstance, and to weigh as aggravating an aggravating circumstance which the law requires to be merged with another such circumstance for sentencing purposes, and, where a trial court considers, and weighs, both such improper aggravators, the death sentence imposed violates the offender's constitutional rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, and Art. I Secs. 9 and 16 of the Ohio Constitution, and must be reversed."

{¶ 69} "Proposition of Law No. 10: Where the state fails to establish beyond a reasonable doubt that aggravation outweighs mitigation beyond a reasonable doubt, the death penalty is absolutely precluded, and the imposition of the death sentence under such circumstances constitutes a violation of the offender's constitutional right to be free of cruel and unusual punishment and also his right to due process of law."

{¶ 70} "Proposition of Law No. 11: Egregious prosecutorial misconduct during the guilt phase of a capital prosecution prejudices the due process right of the accused to a fair trial under the Fourteenth Amendment to the U.S. Constitution, and Art. I Sec. 16 of the Ohio Constitution, requiring reversal of his conviction and a new trial."

{¶ 71} "Proposition of Law No. 12: The admission of involuntary, incriminating statements, or those given without a valid waiver of the suspect's privilege against self-incrimination, violates that privilege, guaranteed by the Fifth

and Fourteenth Amendments to the Constitution of the United States, and Art. I Sec. 10 of the Ohio Constitution."

{¶ 72} "Proposition of Law No. 13: Where police enter a residence prior to the issuance of a warrant, and where the warrant does not describe the premises as the residence of the accused, who resides at that residence, nor does it connect the accused with the offense, the search and resulting seizure violate the rights of the accused under the Fourth and Fourteenth Amendment[s] to the United States Constitution, and Art. I Sec. 4 of the Ohio Constitution, and a motion to suppress the evidence seized therefrom should be granted."

{¶ 73} "Proposition of Law No. 14: Involuntary manslaughter is always a lesser included offense of aggravated murder, and where the accused has denied a purposeful killing, he is entitled by due process to an instruction on the lesser offense, and denial of a proper request for an instruction on the lesser offense violates the Due Process Clause of the U.S. and Ohio Constitutions, rendering the conviction of capital murder unconstitutional, and the death sentence void."

{¶ 74} "Proposition of Law No. 15: The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and the Ohio Constitution guarantee to the due course of law require the prosecution [to] prove each and every element of a criminal offense beyond a reasonable doubt, and in the absence of evidence sufficient to persuade a rational factfinder of each such element to that degree, a conviction is based upon insufficient evidence, offends due process, and must be reversed."

{¶ 75} "Proposition of Law No. 16: A conviction—and a death sentence—must be reversed, and a new trial granted, where the conviction is contrary to the manifest weight of the evidence."

{¶ 76} "Proposition of Law No. 17: The Ohio capital statutes, for purposes of proportionality review, death sentences must be compared with all other cases

within the jurisdiction in which the death sentence was imposed, as well as those capital cases in which it was not imposed. [*Sic*.]"

{¶ 77} "Proposition of Law No. 18: The Ohio death penalty statutes are unconstitutional, violating the Eighth Amendment proscription of cruel and unusual punishments, the Fourteenth Amendment guarantees to due process of law and to the equal protection of the laws, and also violating the concomitant provisions of the Ohio Constitution."

{¶ 78} "[Subproposition of Law No. 18(A) ]: The death penalty is so totally without penological justification that it results in the gratuitous infliction of suffering, and that, consequently, there is no rational state interest served by the ultimate sanction."

{¶ 79} "[Subproposition of Law No. 18(B) ]: Both locally, statewide and nationally, the death penalty is inflicted disproportionately upon those who kill whites as opposed to those who kill blacks, and even within Hamilton County, the death penalty is selectively imposed, rendering the penalty as applied in Hamilton County arbitrary and capricious on the one hand, and the product of racial discrimination on the other."

{¶ 80} "[Subproposition of Law No. 18(C) ]: The use of the same operative fact to first elevate what would be 'ordinary' murder to aggravated murder, and then to capital, death-eligible aggravated murder permits the state (1) to obtain a death sentence upon less proof in a felony murder case than in a case involving prior calculation and design, although both crimes are ostensibl[y] equally culpable under the Revised Code, and (2) fails to narrow the capital class to those murderers for whom the death penalty is constitutionally appropriate."

{¶ 81} "[Subproposition of Law No. 18(D) ]: The requirement that a jury must recommend death upon proof beyond a reasonable doubt that the aggravating circumstances outweigh only to the slightest degree the mitigating circumstances renders the Ohio capital statutes quasi-mandatory and permits the execution of an

offender even though the mitigating evidence falls just short of equipoise with the aggravating factors, with the result that the risk of putting someone to death when it is practically as likely as putting someone to death when it is practically as likely as not that he deserves to live renders the Ohio capital process arbitrary and capricious, and, in the absence of a requirement that, before death may be imposed, aggravating factors must *substantially* outweigh mitigating factors, unconstitutional."  (Emphasis *sic*.)

**{¶ 82}** "[Subproposition of Law No. 18(E) ]:  The Ohio capital statutes are constitutionally inf[i]rm in that they do not permit the extension of mercy by the jury even though aggravating factors may only slightly outweigh mitigating factors."

**{¶ 83}** "[Subproposition of Law No. 18(F) ]:  The provisions of Crim.R. 11(C)(3) permitting a trial court to dismiss specifications upon a guilty plea only under the nebulous and undefined concept 'in the interests of justice' (1) needlessly encourage guilty pleas and the concomitant waiver of the right to jury, to compulsory process and to confrontation and (2) reintroduce the possibility that the death sentence will be imposed arbitrarily and capriciously."

**{¶ 84}** "[Subproposition of Law No. 18(G) ]:  The Ohio capital sentencing scheme is unconstitutional because it provides no standards for sentencing or review at several significant stages of the process and consequently death sentences are imposed, and reviewed, without sufficient statutory guidance to juries, trial courts and reviewing courts to prevent the unconstitutional arbitrary and capricious infliction of the death penalty."

**{¶ 85}** "[Subproposition of Law No. 18(H) ]:  The decision of the Supreme Court of Ohio in State v. Gumm and State v. Wogenstahl has rendered the Ohio capital statutes unconstitutional in that they encourage, rather than prevent, the arbitrary and capricious imposition of the penalty of death."

{¶ 86} "Proposition of Law No. 19: Prospective jurors who believe that the death penalty should always, or 'automatically' be imposed if the accused is convicted of capital murder must be excluded from the jury for cause, and the defense is entitled to explore on voir dire examination the attitudes of prospective jurors pertaining to the automatic imposition of the death sentence. The presence of even one such juror on the panel renders the death sentence unconstitutional under the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution, and Art. I Secs. 9, 10 and 16."

{¶ 87} "Proposition of Law No. 20: A death sentence recommended by a jury from service on which one or more veniremen were excused because of their views concerning capital punishment cannot stand unless it affirmatively appears on the record that each such venire[man] excused for cause unequivocally indicates that his scruples against capital punishment will automatically prevent him from recommending the death penalty and/or that such views will render him unable to return a verdict of guilty no matter what the evidence, and that he is prevented by his scruples from following the instructions of the court and considering fairly the imposition of the death sentence."

{¶ 88} "Proposition of Law No. 21: It is constitutionally impermissible under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution for the state, in a capital prosecution, to exclude from the jury prospective jurors solely on the basis of their race."

{¶ 89} "Proposition of Law No. 22: Where a prospective juror in a capital case lived in the neighborhood where the murder occurred, knew the victim and had seen the accused around the area, and had coached football at a high school where the accused had played football, there is an unacceptable risk that such juror would bring to his deliberations information not brought out in the evidence."

{¶ 90} "Proposition of Law No. 23: Where the defense fails to move to merge capital specifications which ought to be merged, such failure constitutes

constitutionally ineffective assistance of counsel, and, where the accused is sentenced to death in reliance upon an improper aggravating circumstance as a result, the accused's Eighth Amendment rights are violated as well as his Sixth Amendment right to effective assistance of counsel."

{¶ 91} "Proposition of Law No. 24:  Where, during a criminal trial, there are multiple instances of error, and the cumulative effect of such errors deprives the accused of a fair trial and undermines the reliability of the conviction and the sentence of death imposed upon a jury verdict, the rights of the accused to due process and to be free from cruel and unusual punishment, under the Fourteenth and Eighth Amendments, respectively, [to] the United States Constitution, and their corollaries in the Ohio Constitution, have been violated, requiring reversal."

{¶ 92} "Proposition of Law No. 25:  It is impermissible under the Eighth and Fourteenth Amendments to the U.S. Constitution and Art. I Sec. 9 of the Ohio Constitution for the trial court to instruct the jury that their verdict is merely a recommendation, as such an instruction impermissibly attenuates the jury's sense of responsibility for its decision, and a death sentence imposed following such an instruction is constitutionally infirm."

{¶ 93} "Proposition of Law No. 26:  The increased need for reliability required in capital cases by the Ohio and Federal Constitutions mandates the granting to the defense [of] more than six peremptory challenges."

{¶ 94} "Proposition of Law No. 27:  Where the trial court's instructions at the penalty phase of a capital prosecution are prejudicially erroneous, the death sentence imposed based upon the jury's death verdict violates the rights of the accused under the Eighth and Fourteenth Amendments to the U.S. Constitution, and their corollaries under the Ohio Constitution, and must be reversed, and the offender sentenced to life imprisonment."