[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
OPINION
Defendant-Appellant, Terrence Johnson ("Appellant"), appeals his conviction for aggravated burglary, a violation of R.C. 2911.01(A)(2), and his conviction for having weapons while under disability, a violation of R.C. 2923.13(A)(3). Appellant was also charged and convicted of a firearm specification. For the following reasons, we affirm Appellant's convictions.
In the early morning hours of June 6, 1997, Appellant and several others met at Rhonda Crawford's home for a social gathering. Rhonda Crawford is Appellant's ex-wife. Appellant and Rhonda have three children from their previous marriage. Kenneth Latham and Rebecca Comer — Rhonda's sister, were also present at Rhonda's home. Throughout the morning, Rhonda, Rebecca, Kenneth, and Appellant had consumed beer, marijuana, and cocaine.
On or about 3:30 in the morning, the four left Rhonda's home for a car ride in the country. At some point during the ride, Rhonda and Appellant began quarrelling. A physical altercation ensued and Rhonda was left with a bloody nose. Rebecca, the driver, stopped the car and Appellant voluntarily exited the vehicle. Thereafter, Appellant hitchhiked home.
Rebecca, Rhonda, and Kenneth then proceeded to Rebecca's home. While at Rebecca's residence, Appellant called the home inquiring about Rhonda's whereabouts. Shortly thereafter, one of Appellant's and Rhonda's children called Rebecca's residence informing her that Appellant was on his way to the home. Rebecca testified that shortly thereafter Appellant pulled into her driveway in a pick-up truck — came to a screeching halt, and exited the vehicle. Rebecca testified that Appellant had a shotgun in his possession at the time.
Upon observing Appellant with the shotgun, Rebecca ran to the second floor of the home and called 911. Meanwhile, Rhonda hid herself in a room located on the first floor of the home. Rebecca testified that she had heard Appellant enter the home and had observed him at the foot of the stairs holding a shotgun. Thereafter, Rebecca heard Appellant shout and the shotgun "cock." At trial, Rhonda also testified that she had heard a sound similar to a gun "cock."
Shortly thereafter, Officer Reinbolt of the Seneca County Sheriff's Office arrived at the residence. Officer Reinbolt exited his patrol car and shouted for Appellant to come out of the home. Thereupon Appellant emerged from the home and was placed under arrest. At the time of his arrest, Appellant did not have a shotgun in his possession. After searching the home, the police discovered a shotgun underneath a sleeping bag in the detached garage.
Appellant was tried before a jury which found him guilty of aggravated burglary, having weapons while under disability, and possessing a firearm while committing aggravated burglary. Appellant was sentenced to an eight-year term and a one-year term in prison, respectively. Appellant was also sentenced to an additional three-year term pursuant to the gun specification. Appellant now appeals, setting forth three assignments of error.
 Assignment of Error No. 1 The trial court erred in denying Appellant's request for jury instructions on the lesser-included offenses of aggravated trespass and criminal trespass, where the State's case called evidence of aggravated burglary into question, in violation of Appellant's due process rights under Sec. 16, Art. I and the 14th Amendment, to Ohio and U.S. Constitutions, respectively. [sic]
Appellant asserts that the trial court erred in failing to instruct the jury on two lesser included offenses of aggravated burglary. Specifically, Appellant contends that the trial court should have instructed the jury that the offenses of aggravated trespass and criminal trespass are lesser included offenses of aggravated burglary. For the following reasons, we disagree.
Pursuant to R.C. 2945.74 and Crim.R. 31(C), when supported by the evidence at trial, the jury must be instructed on lesser included offenses. State v. Deem (1988), 40 Ohio St.3d 205, paragraph one of the syllabus. R.C. 2945.74 provides, in pertinent part:
 When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense.
The Supreme Court of Ohio has adopted a two-prong test to determine whether a jury instruction on a lesser included offense is necessary. First, the trial court must determine whether the offense on which the instruction is requested is a lesser included offense of the crime charged. State v. Kidder (1987), 32 Ohio St.3d 279,280-281; State v. Coulter (1992), 75 Ohio App.3d 219,225. Secondly, the court must determine whether the evidence supports an instruction on the lesser included offenses. Kidder,32 Ohio St.3d at 281.
The Supreme Court of Ohio in Deem, 40 Ohio St.3d at paragraph three of the syllabus, set forth a three-part test to determine whether an offense is a lesser included offense of another offense. The Court in Deem, supra, held that:
 An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (citation omitted)
See, also, State v. Wilkins (1980), 64 Ohio St.2d 382, 384.
In the present case, Appellant was convicted of aggravated burglary. R.C. 2911.11, the aggravated burglary statute, provides in pertinent part:
 (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
 R.C. 2911.21, the criminal trespass statute, states in pertinent part:
 (A) No person, without privilege to do so, shall do any of the following:
 (1) Knowingly enter or remain on the land or premises of another[.]
This Court has previously held that criminal trespass is a lesser included offense of aggravated burglary. See State v. Risner
(Aug. 4, 1992), Hardin App. No 6-91-21, unreported. Therefore, we must now determine whether aggravated trespass is a lesser included offense of aggravated burglary.
R.C. 2911.211, the aggravated trespass statute, provides in pertinent part:
 (A) No person shall enter or remain on the land or premises of another with purpose to commit on that land or those premises a misdemeanor, the elements of which involve causing physical harm to another person or causing another person to believe that the offender will cause physical harm to him.
We first note that aggravated burglary is a first-degree felony, while aggravated trespass is a first-degree misdemeanor. See R.C.2911.11(B); R.C. 2911.211. Thus, the crime of aggravated trespass carries with it a lesser penalty than the crime of aggravated burglary. Further, upon comparing the elements of the two offenses, aggravated burglary cannot be committed without also committing aggravated trespass. Finally, pursuant to R.C. 2911.11, the crime of aggravated burglary contains the additional elements that the trespass must be by force, stealth, or deception in an occupied structure and that the offender must have a purpose to commit any criminal offense rather than just a misdemeanor.
Accordingly, the three-part test set forth in Deem, 40 Ohio St.3d, at paragraph three of the syllabus, to determine whether an offense is a lesser included offense of another, has been met. Therefore, we find that aggravated trespass is a lesser included offense of aggravated burglary.[1]
Since the first prong of the test has been met with regard to each of the alleged lesser included offenses, we will proceed to the second step of our analysis. We must now determine whether the evidence supports an instruction on the lesser included offenses. State v. Koss (1990), 49 Ohio St.3d 213, 218-219;Kidder, 32 Ohio St.3d at 282-283; Menser, supra.
The Supreme Court of Ohio in State v. Thomas (1988), 40 Ohio St.3d 213, at paragraph two of the syllabus, has held in pertinent part:
 `Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.'
(Emphasis added.) See, also, State v. Sheppard (1998), 84 Ohio St.3d 230,236; State v. Raglin (1998), 83 Ohio St.3d 253, 257. Thus, we must determine whether the evidence presented at trial would reasonably support both an acquittal on the aggravated burglary charge and a conviction upon either of the lesser included offenses of aggravated or criminal trespass.
A careful and thorough review of the entire record shows ample evidence that on June 6, 1997 Appellant trespassed by force into Rebecca Comer's home with the purpose to commit a criminal offense. In particular, Rebecca Comer testified that Appellant threatened to inflict physical harm upon Rhonda Crawford, and that Appellant possessed a shotgun at the time of the offense. The 911 tape introduced into evidence at trial further corroborates the witness' testimony.
For these reasons, we cannot say that the evidence presented at trial would reasonably support both an acquittal on the charge of aggravated burglary and a conviction upon either of the lesser included offenses of criminal or aggravated trespass. In conclusion, we find that the instructions as given at trial were complete and accurate in every respect.
Accordingly, Appellant's first assignment of error is overruled.
 Assignment of Error No. 2 Defense counsel rendered ineffective assistance of trial counsel for failing to move to exclude the shotgun evidence, in violation of Sec. 10, Art. I, and the 6th Amendment, to Ohio and U.S. Constitutions, respectively. [sic]
In his next assignment of error, Appellant asserts a claim of ineffective assistance of counsel. Specifically, Appellant contends that trial counsel was ineffective in failing to file a motion to suppress or to object to the introduction of the shotgun into evidence. We disagree.
The standards governing claims of ineffective assistance of counsel under the federal and Ohio constitutions are well established and are essentially the same. Strickland v.Washington (1984), 466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. In a claim of ineffective assistance of counsel, the burden is on the appellant to prove that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland, supra, at 687. The Supreme Court of Ohio has held that counsel's performance is deficient if it falls below the objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. In order to show prejudice, the defendant must demonstrate that were it not for counsel's poor performance, the outcome of the trial would have been different. Bradley, supra, at paragraph three of the syllabus.
We must also keep in mind there exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Furthermore, "strategy and tactical decisions exercised by defense counsel `well within the range of professionally reasonable judgment' need not be analyzed by a reviewing court." State v.Walker (1993), 90 Ohio App.3d 352, 359, quoting Strickland,466 U.S. at 699. Thus, a reviewing court will not second-guess what could be a matter of trial strategy. State v. Smith (1985),17 Ohio St.3d 98.
It is well established that where there exist no grounds for the suppression of evidence, a defense attorney has no duty to file a motion to suppress evidence. State v. Gibson (1980),69 Ohio App.2d 91, 95. However, where there exist reasonable grounds for filing a motion to suppress, counsel's failure to file the motion may constitute ineffective assistance and warrant reversal.State v. Garrett (1991), 76 Ohio App.3d 57; State v. Justice (Dec. 24, 1996), Franklin App. No. 96APA05-616, unreported (holding that the "failure to file or pursue a motion to suppress, which could possibly have been granted and which implicated matters critical to the defense, constitutes ineffective assistance of counsel").
Appellant initially contends that the arrant carelessness by the police in processing the shotgun and the ensuing failure of the police to secure fingerprints on the shotgun should have rendered the gun inadmissible at trial. We must therefore determine whether Appellant's motion to suppress the shotgun into evidence, had it been filed, could possibly have been granted by the trial court. If so, Appellant's attorney at the trial level had a duty to file the motion.
We first note that any carelessness by the police in processing the weapon at the crime scene, as well as any failure in securing fingerprints on the weapon do not go to the admissibility of the evidence but, rather, the weight of theevidence. It is well settled that the weight of the evidence and the credibility of the witnesses are primarily questions for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, Appellant's initial contentions are without merit.
Appellant further maintains that a lack of the whereabouts of the shotgun subsequent to his arrest broke the chain of custody. Therefore, Appellant asserts, the shotgun should have been rendered inadmissible at trial.
 Evid. R. 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A "chain of custody" is part of the authentication and identification mandate set forth in the rule and the State has the burden of establishing the chain of custody of a specific piece of evidence before it can be admitted at trial. State v. Brown
(1995), 107 Ohio App.3d 194, 200; State v. Barzacchini (1994), 96 Ohio App.3d 440, 458; State v. Moore (1973), 47 Ohio App.2d 181, 183.
The Supreme Court of Ohio in State v. Wilkins (1980), 64 Ohio St.2d 382,389 held that "[a] strict chain of custody is not always required in order for physical evidence to be admissible." The State need only establish that it is "reasonably certain" that substitution, alteration or tampering did not occur. Brown,supra, at 200; State v. Blevins (1987), 36 Ohio App.3d 147, 150. Further, any breaks in the "chain of custody" after establishmentof such a reasonable certainty go to the weight afforded theevidence rather than its admissibility. See Brown, supra, at 200;Blevins, supra, at 150; Columbus v. Marks (1963), 118 Ohio App. 359,360-361.
 In the present case, Officer Krupp testified that the shotgun introduced at trial was the same weapon found at the crime scene. Further, Officer Reinbolt, the first police officer to arrive at the scene, testified he found a piece of wood lying beside the pick-up truck Appellant had driven to Rebecca's home. Officer Reinbolt testified that upon later examination the piece of wood fit into the wood stock of the shotgun. Reinbolt then testified that the shotgun shown to him at trial was the same shotgun that he had observed at the scene of the crime.
Based on the foregoing testimony of the two officers, the State effectively established to a reasonable certainty that substitution, alteration, or tampering of the evidence did not occur. Therefore, any breaks in the "chain of custody" must go to the weight afforded the evidence rather than its admissibility.
For the aforementioned reasons, trial counsel had no duty to file a motion to suppress or to object to the introduction of the gun into evidence. Therefore, Appellant's claim of ineffective assistance of counsel is without merit.
Accordingly, Appellant's second assignment of error is overruled.
 Assignment of Error No. 3 The trial court erred in permitting the jury's guilty verdict, which was against the manifest weight and sufficiency of the evidence, pursuant to Sec 16, Art. I, and the 14th Amendment to the Ohio and U.S. Constitutions, respectively.
Appellant asserts in his final assignment of error that the verdict is against the manifest weight of the evidence. Specifically, Appellant contends that there is insufficient evidence of trespass to support a conviction for aggravated burglary. Appellant further maintains that the evidence offered at trial does not support the State's theory that Appellant possessed a weapon at the time of the alleged offense.
We first note that issues regarding sufficiency of the evidence and weight of the evidence are resolved through the use of two different standards. State v. Thomkins (1997), 78 Ohio St.3d 380. The standard for appellate courts to use when reviewing a claim of insufficiency of the evidence is as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
The Supreme Court of Ohio has held that in determining whether a verdict is against the manifest weight of the evidence appellate courts shall:
 [Review] the entire record, [weigh] the evidence and all reasonable inferences, [consider] the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 Thompkins, 78 Ohio St.3d 380, 387, citing State v. Martin
(1983), 20 Ohio App.3d 172, 175. The Court in Thompkins also cautioned appellate courts to use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal. Thompkins, 78 Ohio St.3d at 387.
For the reasons that follow, we are not persuaded that Appellant's conviction for aggravated burglary is based upon insufficient evidence or is against the manifest weight of the evidence.
Appellant initially maintains that he had implied permission to enter Rebecca Comer's home. We disagree.
 We first note that trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure is a required element of aggravated burglary. See R.C. 2911.11. It is well-settled that trespass requires one to knowingly remain on the property of another without the authority, consent, or privilege to do so. See R.C. 2911.21; State v. Hill (1996), 75 Ohio St.3d 195, 207.
 In the case sub judice, Rebecca Comer testified that Appellant rarely visited her home.[2]
Further, on the morning of the incident, although Appellant had allegedly entered the house through the front door, there is no evidence in the record that he was privileged to do so. Rebecca Comer's testimony at trial makes it abundantly clear that on the day of the incident Appellant entered the home[3], and did so without the authority or consent of Rebecca Comer. For these reasons, the State presented sufficient evidence to show that Appellant was in fact a trespasser.
Appellant further maintains that the evidence offered at trial does not support the State's theory that he possessed a weapon at the time of the alleged offense. For the following reasons, we find Appellant's proposition without merit.
Rebecca Comer testified at trial that Appellant entered her home armed with a gun.[4] Rhonda Crawford also testified that she heard the "cocking" sound of a gun while hiding behind a couch located on the first floor.[5] Thus, we find there was more than adequate evidence to support the jury's conclusion that upon entering the premises Appellant possessed or had under his control a deadly weapon.
Further, even had we found insufficient evidence that Appellant possessed or had under his control a deadly weapon upon entering the premises, there is ample evidence in the record to suggest that Appellant threatened to inflict physical harm upon another. For the aforementioned reasons, we find that Appellant's conviction for aggravated burglary is neither based upon insufficient evidence nor is the conviction against the manifest weight of the evidence.
Accordingly, Appellant's third assignment of error is overruled.
Judgment affirmed.
 BRYANT, P.J., and SHAW, J., concur.
[1] See, also, State v. Menser (Sept. 25, 1998), Hamilton App. Nos. C-970562 and C-970578, unreported (holding that aggravated trespass is a lesser included offense of aggravated burglary).
[2] The proceedings of February 19, 1997 reveal the following:
Appellant: "All right. But he's been in the house?"
Rebecca Comer: "A couple of times, yeah."
Appellant: "Just a couple of times in eight years?"
 Rebecca Comer: "Uh-huh. Maybe the most, five. He, you know, he didn't come out to my house very often."
[3] The proceedings of February 19, 1997 reveal the following:
 State: "After you saw the defendant come towards your house, towards your door, did, did you hear anything which would indicate that he had actually come into your house?"
 Rebecca Comer: "Well, I heard the door slam the wall because I do not have door stops. We did remodeling and I don't have a door stop and it, you know, I, you can hear the door, it squeaks, too. That's, you know, that's —"
 State: "So at that point in time you believed he was in your house?"
 Rebecca Comer: "Oh, I knew. Yeah, he was yelling and everything, yeah."
[4] The proceedings of February 19, 1997 reveal the following:
 State: "What did you see when you looked out the window?"
 Rebecca Comer: "Well after I got upstairs, you know, first thing I did was looked out the window with the phone; saw him get out of his truck with a rifle or a shotgun yelling. He was yelling something. I couldn't hear him but."
* * *
State: "Okay. It was a long gun?"
Rebecca Comer: "Yes."
* * *
 Rebecca Comer: "And I heard him come into the door and he's yelling."
* * *
 State: "What happened next after he came to the door?"
 Rebecca Comer: "Well, I, he was yelling that if you, if he didn't find my sister Rhonda now that he'd kill everybody in the house and right after that he cocked the gun. I heard that and that's when I, you know, that's when I was losing it" * * *.
[5] The proceedings of February 19, 1997 reveal the following:
 State: "Okay. As you were hidden, did you hear any other noises?"
Rhonda Crawford: "Yeah, I heard clicking."
State: "What type of clicking?"
 Rhonda Crawford: "To me, I believe it was the cocking of a gun."
 State: "Okay. Have you ever heard a gun cock before?"
Rhonda Crawford: "Yes, I have."
 State: "Okay. And the sound you heard was similar to that type of sound?"
Rhonda Crawford: "Yes."