## MORRIS ISRAEL *vs.* L. M. AYER & Co.

In an action on a bill of exchange by the payee against the acceptor, if no evidence be given tending to prove that the acceptance was for the accommodation of the plaintiff, but only that it was for the accommodation of the drawers, it is not error to refuse to charge the jury "that the acceptor for the accommodation of the plaintiff, as well as for the drawers, is not liable to a suit by the plaintiff, the contract being *nudum pactum.*"

To an action on a bill of exchange by the payee against the acceptor, it is no defense that the acceptance was for the accommodation of the drawer, and that fact was known to the payee.

The acceptor of a bill of exchange for the accommodation of the drawer, is not, as between the original parties to the bill, a surety for the drawer, though the fact that the acceptance was for the accommodation of the drawer was known to the payee at the time.

Where the payee of a bill of exchange which was accepted, with his knowledge, for the accommodation of the drawer, transfers it, and at its maturity takes it up and accepts a renewal of the bill, a new consideration arises out of the transaction, amounting, as between payee and acceptor, to a valuable consideration.

Where there is some evidence, though slight, tending to prove that the defendants, the acceptors of a bill of exchange, had been discharged by the plaintiff, the payee of the bill, the question is one of fact for the jury, and it is error in the Judge to refuse to charge them upon the point; he should do so with proper instructions as to what would constitute, in law, a discharge between the parties.

It is error to charge a jury that a debtor who is insolvent can make no assignment by which a creditor is preferred, or to charge that a debtor, who is insolvent, is unable to make any preference to secure a creditor, because such preferences are not allowed by the Bankrupt Act—the law of the State being that a *bona fide* preference of one creditor by an insolvent debtor is valid, and the Bankrupt Act not avoiding such preferences under all circumstances.

BEFORE CARPENTER, J., AT CHARLESTON, FEBRUARY TERM, 1870.

This was an action of assumpsit on a bill of exchange for $4,000, drawn March 29, 1867, by Hoffman, Brabham & Co., payable, at sixty days, to the order of the plaintiff, and accepted by the defendants. A credit of $1,000, dated October 5, 1867, was endorsed on the bill. The defendants pleaded *non assumpsit*, and several special pleas.

The execution of the bill was admitted, and the defendants were severally examined as witnesses for the defence. The substance of their testimony was that the bill sued on was the renewal of one previously given for the same amount; that they accepted the first bill without consideration, and for the accommodation of the drawers, and that this was known to the plaintiff at the time; that the first bill had been placed in a bank, and when the renewal was given plaintiff gave defendants a check on the bank for $4,000 to take it up; that Hoffman, Brabham & Co., were merchants in the city of Charleston, and that, in April, 1867, shortly after the renewal was given, they were burned out; that defendants then became concerned about their acceptance, and spoke to the plaintiff about it; that plaintiff said he had received from the drawers assignments of policies of insurance on their goods to protect the bill; that he was amply protected, his assignments amounting to $7,000. To one of the defendants he said, tell General Ayer, another defendant, "not to give himself any trouble; I am fully secured and, if I am, Ayer & Co. should be." The witness replied, "Well, if you are satisfied, we are." That defendants were anxious to secure themselves by procuring from the drawers an assignment of a certain policy of insurance on their goods, but by reason of what plaintiff said, they made no effort to secure themselves.

The plaintiff was examined as a witness in reply. He testified that the day after the store of the drawers was burned, some policies of insurance on their goods were assigned to him by one of the firm, but they were not delivered, and he never got them; he agreed to take what he could get from the policies, and nothing more; he did not receive them in discharge of the debt; he never had them, and never so stated. F. J. Pelzer, assignee of the drawers, paid him $1,000 on the bill; the drawers of the bill were insolvent when the fire occurred.

F. J. Pelzer testified that Hoffman, Brabham & Co., made an as-

signment to the witness for the benefit of their creditors. The deed of assignment was dated 10th April, 1867. It included certain policies of insurances against fire—among them those that had been assigned to plaintiff. The policies assigned to plaintiff were all garnisheed in New York.

The policies of insurance against fire, to Hoffman, Brabham & Co., amounting in the aggregate to $11,000, and issued by companies doing business in New York, were given in evidence. On each policy was indorsed an assignment by the insured to the plaintiff, dated April 4th, 1867. Henry Buist, subscribing witness to the assignments, testified that the assignments were made by the junior member of the firm of Hoffman, Brabham & Co.; they were never delivered to the plaintiff, nor accepted by him in discharge of the bill; they were intended to serve, in case the other members of the firm approved of them, as a protection to the plaintiff, without prejudice to his rights against the acceptors of the bill; the senior partners never approved the assignments, nor were the policies ever delivered.

Hoffman, Brabham & Co. were adjudicated bankrupts March 27, 1868. The case and exceptions, after stating the evidence, proceeded as follows:

"And the testimony on both sides being closed, the defendants prayed the Court to instruct the jury in the following particulars:

" That the acceptor for the accommodation of the plaintiff, as well as for the drawers, is not liable to a suit by the plaintiff, the contract being *nudum pactum.*

" That the acceptor for the accommodation of the drawer, with knowledge of the fact of the want of consideration, is entitled to all the advantages of a surety, and if the plaintiff shall extend credit to the drawer, or shall have given up securities, the acceptor is discharged.

" That if the jury shall find the facts stated in the special pleas under the issues in this cause, or if they shall find the facts under any one of them, they shall find for the defendants.

"That if they find that the plaintiff discharged the defendants, or used any declaration to defendants, from which a discharge, or the intention to discharge them, will be inferred, they will find for the defendants.

" But the Court rejected each and every of the instructions prayed for by the defendants, and, in lieu thereof, instructed the jury that if they believed that defendants, with the knowledge of the plaintiff,

were accommodation acceptors for Hoffman, Brabham & Co., that by reason of representations made ·by plaintiff to defendants, they were deterred from obtaining security from Hoffman, Brabham & Co. for the bill, and that Hoffman, Brabham & Co. could and would have secured defendants if they had applied for such security, then they should find for the defendants. That if the jury believed that the firm of Hoffman, Brabham & Co. had assigned certain policies to the plaintiff, and delivered the same to him, in discharge of the bill sued on, then they should find for defendants. That in determining whether Hoffman, Brabham & Co. could have secured defendants after the fire, the jury should determine whether they were in fact insolvent; if so, they could make no assignment by which a creditor could be preferred, and so could not have secured defendants.

"To the granting of which instructions, and the refusal of those prayed for by the defendants, the defendants then and there, and before the jury had withdrawn from the bar, did except.

"And the jury having retired, and subsequently returning into Court for further instructions, asked His Honor whether, if they find Hoffman, Brabham & Co. were insolvent at the time of the fire, they can find that the said Hoffman, Brabham & Co. could make any assignment of policies to protect the plaintiff or the defendants; when his Honor instructed them, that if Hoffman,.Brabham & Co. were then insolvent at the time, they would be unable to make any preference to secure any creditor, because such preferences were not allowed by the Bankrupt Act. To which said instruction the defendants then and there, and before the jury had withdrawn, did except, and still do except."

*Brewster & Spratt*, for appellants.

*Buist & Buist*, contra.

April 20, 1871. The opinion of the Court was delivered by

MOSES, C. J. The pleadings and evidence are set out at length in the brief, and will only be referred to incidentally and in effect, in the opinion which will express the judgment of the Court.

The first exception submits error, on the part of the Circuit Judge, in not instructing the jury "that the acceptor for the accommodation of the plaintiff, as well as for the drawers, is not liable to a suit by the plaintiff, the contract being *nudum pactum*."

"An accommodation bill is a bill to which the acceptor, drawer,

or indorser, as the case may be, has put his name without consideration, for the purpose of benefiting or accommodating some other party, who is to provide for the bill when due. A party who requests and procures another to lend his acceptance, thereby engages to take up the bill at maturity, and to indemnify the acceptor against the consequences of non-payment."—Byles on Bills of Exchange, 95; Story on Bills, Sections 187, 191.

There is a wide and well recognized distinction between bills and promissory notes, and all other parol contracts, as to defenses which may operate to defeat their validity, because of want of sufficient consideration. Such instruments imply a consideration in themselves, and a *bona fide* holder, who takes one in the usual course of trade or commercial dealing, is not required to shew that he paid value for it. One who claims by transfer or endorsement, before maturity, for value from the original holders, is not bound by any legal or equitable defenses which might prevail between them and the immediate parties to the transaction. He derives through a title, unaffected even by a fraud unknown to him, by which the paper may have got access to the commercial market.

The rule, however, for the very reason on which it is founded, cannot prevail between the original parties to the instrument. As between them, its value depends on the consideration for which it is held. If it was executed for the favor or accommodation of one of them, it wants that element so essential to a valid agreement. If no consideration passed, and the use of the name was only given to another as the mode whereby he might obtain value or credit on his own account, and for his own use, what loss has he suffered by the payment which should be compensated by him who thus loaned his credit?

"However, in general, between the original parties or a holder who has not given full value, the defendant is at liberty to show that he drew, accepted, endorsed or made the bill or note *for the accommodation* of the plaintiff, or of one of them, or of a person for whom he is trustee, who, either expressly or impliedly, engaged to provide for the bill, or the defendant may show that he received no consideration, or none that was, in point of law, adequate, and thus may entirely defeat the action or reduce the claim."— Chitty on Bills, 703; 3 Kent, 80; Story on Bills, Sect. 187; Byles, 92; *Farrar and Hayes* vs. *Gregg*, 1 Rich., 380.

Although there was error in the refusal of the Circuit Judge to charge the jury, as thus claimed by the appellants, still it can-

not be ground for a *venire de novo*, because the' testimony they submitted does not sustain the allegation involved in their proposition, that the acceptance of the bill, of which the one sued on is a renewal, was for the accommodation of the plaintiff as well as of the drawers; in fact, the plea avers the contrary, to wit: that it was for the accommodation of the said Hoffman, Brabham & Co., the drawers. Ayer, one of the defendants, himself testifies, " that the first acceptance was without consideration to defendants, from H., B. & Co., *and merely for the accommodation of the latter.*" Trumbo, another of the defendants, in his evidence, says: " The draft sued on was accepted for the accommodation of H., B. & Co., and that fact was known to the plaintiff." This knowledge, however, cannot change the relation of the plaintiff, unless it could be shown that, as between him and the drawers, there was no consideration ; for the very purpose of the defendants, in the accommodation they afforded the drawers, recognized the consideration moving from the plaintiff to them. From respect to the commercial value of bills of exchange, the authorities go very far to preclude any defense against a *bona fide* holder, before due, by reason of knowledge that the bill was founded on an accommodation transaction. " The payee and acceptor, in the relation in which they stand to each other, are not immediate but remote parties, and between them two distinct considerations, at least, must come in question : 1st. That which the defendant received for his liability; and, 2d, that which the plaintiff gave for his title. Between them the action will not fail, unless there be absence or failure of both of these considerations."— Byles, 92.

Mr. Parsons, in his second volume on *notes* and bills, p. 27, says that "the principle is a general one, that a person making or endorsing a note, or endorsing a bill, or becoming liable in any way on negotiable paper for the benefit of another person, is liable to a third person, even with notice of the want of consideration, but is not to the person for whose benefit the paper was signed." The authorities to which he refers clearly support his position.

Mr. Chitty, in his work on bills, at page 305, says: "But where the bill is in the hands of a *third* person, who has given value for it, and who becomes the holder before it was due, the acceptance will, in general, be obligatory on the acceptor, though he received no consideration, and although the holder knew that circumstance, because the very object of an accommodation acceptance is to enable the party accommodated to obtain money or credit from a third

person, and, therefore, the want of consideration furnishes no defense to one who has advanced money on the credit of the acceptor, though he may have been defrauded by the drawer."

The same doctrine is announced in Byles, p. 93.

Where the payee himself is not the party accommodated by the acceptance, he is entitled to the same position as a holder for value with knowledge of the want of consideration between the drawer and acceptor. If the acceptance was for the benefit of the former, so far as the latter was concerned, it was a valid bill in the hands of the payee.

In *Grant* vs. *Ellicott*, 7 Wend., 227, it was held that "it is no defense in an action on a bill of exchange by the *payee* against the acceptor, that it was accepted without consideration, or, in other words, was an accommodation acceptance for the drawer, and that fact was known to the payee." *Savage*, C. J., delivering the opinion of the Court, refers to *Charles* vs. *Marsden* 1 Taunt., 224, and quotes the language of Lawrence, J., there used, as follows: " In the present case it is to be supposed that the drawer persuades a friend to accept a bill for him because he cannot lend him money. Would there be any objection if, with the knowledge of the circumstance that this is an accommodation bill, some person should advance money upon it before it was due? Then what is the objection to his furnishing it after it is due? For there is no reason why a bill may not be negotiated after it is due, unless there was an agreement for the purpose of restraining it."

It is further alleged as error, that the Circuit Judge refused to charge the jury " that the acceptor for the accommodation of the drawer, with knowledge of the fact of want of consideration, is entitled to all the advantages of a surety, and if the plaintiff shall extend credit to the drawer, or shall have given up securities, the acceptor is discharged."

This exception raises a question of much interest, and one which, we believe, has never been presented for the judgment of the Courts of the State.

Where one is the holder of an instrument, in which principal and sureties are bound, he is not permitted to deal with the former in any way that would prejudice the sureties, as either by extending, for consideration, the time of payment, or releasing any collateral or counter security which he may have for the debt. The rule is an equitable one, and proceeds upon the ground that the creditor shall not, by a binding contract, change the agreement into

which the sureties have entered by extending the period for its per-\
formance; or where he has received from the principal debtor secu-
rities of any character for the protection of his demand, he is, as to
such securities, a trustee for the benefit of the sureties, and holds
them devoted to their protection and relief. Occupying that posi-
tion by reason of the relation in which he stands to the sureties, he
cannot vary their rights to their prejudice, or make a new contract
with the principal, to their wrong or injury. The surety is enti-
tled, on his payment of the debt, to be subrogated to all the rights
of the creditor; and if he has so affected these, as against the prin-
cipal, in regard to the original contract, as by binding himself to a
change of its terms more favorable to the principal, or has made a
surrender of collateral security in his possession or control, for the
same debt by his own act he has put beyond his command, the
power of realizing the means which he should have retained for the
benefit of the sureties.

In the Courts of this State this equitable doctrine has been re-
cognized to the full extent of holding that whatever would dis-
charge a surety in equity may also be set up as a defense at law.—
*Wayne* vs. *Kirby*, 2 Bail., 551.

The exception under review seeks to extend this principle in
favor of an accommodation acceptor against a holder, knowing,
when he took the bill, that it was without consideration as between
the drawer and drawee, and accepted solely for the accommodation
of the drawer. It follows, as a necessary consequence, that the
rule cannot be applied to such acceptor, unless he is to be held a
mere surety on the bill for the acceptor.

*Laxton* vs. *Peat*, 2 Camp., 185, is the case mainly relied on to
sustain the proposition submitted by the exception, and that case,
decided in the King's Bench by a no less distinguished jurist than
Lord Ellenborough, did hold "that, if the endorser of a bill of
exchange, having notice that it was accepted without consideration,
receive part payment from the drawer, and give him time to pay
the residue, he thereby discharges the acceptor." The eminent
Judge distinctly rested his decision on the ground "that the ac-
ceptor of an accommodation bill, within the knowledge of all the
parties, can only be considered as a surety for the drawer."

The same Judge carried out the same view in *Collott et al.* vs.
*Haigh*, 3 Camp., 281, holding "that the drawer of an accommoda-
tion bill is not discharged by time being given to the acceptor,"
and rested his decision on the ground that "the drawer of an

accommodation bill must be considered as the principal debtor, and the acceptor only in the light of a surety." The case of *Kerrison* vs. *Cooke*, 3 Camp., 361, followed but a few months after, in the Common Pleas, and Gibbs, J., there said, " admitting *Laxton* vs. *Peat* to be law, of'which *grave doubts h we been entertained*, the present case may be distinguished from it."

In *Raggett* vs. *Axmorr*, 4 Taunt., 730, heard in the same year, Mansfield, C. J., said " that, except in the case cited from Campbell, it was never known that anything passing between the other parties could discharge an acceptor."

*Fentum* vs. *Pocock*, 5 Taunt., 192, has been recognized as the leading case on this question, and it expressly and distinctly affirms that the ruling of Lord Ellenborough, in the cases from Campbell, were not law. It has since been followed by the approbation of many eminent Judges, both in England and America, and has been declared, by such learned jurists as Kent and Parsons, to express the true rule.—3 Kent, 86 ; 1 Parsons on Notes and Bills, 327.

In *Fentum* vs. *Pocock*, Mansfield, C. J., said: " No doubt, if the defendant can succeed in establishing the principle that we must subvert and pervert the situation of the parties so as to make the acceptor merely a surety, and the drawer the principal, the consequences contended for must follow." That case differs from *Laxton* vs. *Peat* in this particular, that there the holder took the bill knowing that it was an accommodation one, while in *Fentum* vs. *Pocock* he ascertained the fact after it came into his hands. Mansfield, C. J., said: " It is better not to rest this case on that foundation, for, as it appears to me, if the holder had known in the clearest manner, at the time of his taking the bill, that it was merely an accommodation bill, it would make no manner of difference, for he who accepts a bill, whether for value or to serve a friend, makes himself in all events liable as acceptor, and nothing can discharge him but payment or release."

In *Price* vs. *Edmunds*, 10 B. & C., 578, Parke, J., approved of *Fentum* vs. *Pocock* " as good sense and good law." In *Yallop* vs. *Ebers*, 1 B. & Ad., 698, Tenterden, C. J., said, " *Laxton* vs. *Peat* has been long overruled." It is needless to refer to the many English cases which either expressly or by necessary implication repel the conclusion of Lord Ellenborough and follow the rule adopted by Mansfield.

Mr. Story, in his work on Bills, p. 510, note, says: " The ques-

tion has also come before some of the American Courts, and it has been held that the parties are bound by the character which they assume upon the face of the bill; if by that they are liable as primary debtors, or as principal debtors, then, as to the holder, they are bound as such; and his knowledge, at the time when he takes the bill, that they are, or either of them are, accommodation parties, will not vary the case." He refers to *Bank of Montgomery County* vs. *Walker*, 9 Serg: & R., 229; S. C., 12 Serg. & R., 382. To these may be added *Murray* vs. *Judah*, 6 Cowen, 493, and many others. In the case last named, Sutherland, J., delivering the opinion of the Court, says: "The acceptor of a bill of exchange is undoubtedly the principal debtor, and the drawer the surety, though it be accepted without consideration and for the sole accommodation of the drawer, and nothing will discharge the acceptor but payment or a release. Lord Ellenborough certainly fell into an error when he held a contrary doctrine in *Laxton* vs. *Peat* and *Collott* vs. *Huigh*."

In the opinion of the Court in *Griffith* vs. *Reed*, 21 Wend., 500, it is said, "The presumption" (that the acceptance by the drawee is an acknowledgment on his part that he has funds of the drawer in his hands) "may be rebutted. The drawee may show that he accepted and paid the bill for the accommodation of the drawer, and then, in the absence of any express stipulation, the law will imply an undertaking on the part of the drawer to indemnify the acceptor. On this implied obligation the acceptor may have an action against the drawer, *but not on the bill itself*."

Aside from the general application of the rule, there is a view of the facts in the case before us which materially strengthen its application against these defendants. Even where there may be a want of consideration between the immediate parties to a bill, it could only avail as a defense so long as the bill remained in the hands of the payee. When, however, he has been forced to take it up the law raises a promise on the subsequent payment, and gives a new cause of action.—See *Wood* vs. *Repold*, 3 Harris and J., 125. It was proved that the bill sued upon was given as a renewal of the one for the same amount paid by the plaintiff Israel, and the acceptor, therefore, stands to him as principal, for a valuable consideration was paid by the said plaintiff.

It is alleged as further error, that the Circuit Judge refused to instruct the jury, on the request of the appellants, "that if they find that the plaintiff discharged the defendants, or used any decla-

23A

ration to them from which a discharge, or the intention to discharge them, will be inferred, they should find for the defendants."

A discharge of a bill of exchange may be by any agreement between the parties, founded upon a sufficient consideration, and collateral to the payment of the money, or by some renunciation inducing an act on the part of the acceptor which might not other-wise have been done, which affects his interests, and it may be express or implied from circumstances. In the latter case, a clear intention to discharge, or a clear renunciation of all claims against the acceptor, must be established. Story, 266, and other elementary writers, affirm the same conclusion.

The defendants had a right to the judgment of the jury as to the fact of such discharge. However the judicial eye may fail to perceive any proof on which the claim could be sustained, yet it was a question for the jury, with proper instructions from the Court, as to what, in law, would constitute a discharge between the holder and acceptor of a bill of exchange.

As to the exception to the instructions which were given, save as hereinafter stated, we do not see that the defendants have any just cause of complaint. The error, so far as it may have been of prejudice to them, consists in the charge to the jury, " that, in determining whether H., B. & Co. could have secured defendants, after the fire, they should determine whether they were in fact insolvent; if so, they could make no assignment by which a creditor could be preferred, and so could not have secured defendants." This was again repeated to them in a shape somewhat changed, on the enquiry by the jury, " whether if they find H. B., & Co. were insolvent at the time of the fire, they can find that the said H., B. & Co. could make any assignment of policies to protect the plaintiff or the defendants ?"

His Honor, in answer, instructed them, that if H., B. & Co. " were insolvent at the time, they would be unable to make any preference to secure any creditor, because such preferences were not allowed by the Bankrupt Act."

We think there was error in both of the said instructions.

1st. Without regard to the Bankrupt Act, such an assignment would only be voidable, and not absolutely void. A debtor, even when insolvent, may give a preference to one creditor over another, provided he does not secure to himself an advantage by such preference at the expense of creditors, and that it is not given with the fraudulent view to defeat, hinder or delay other creditors.

2d. In regard to the effect of the Bankrupt Law on the assignment, under the circumstances, to the plaintiff, if ever made.

"The two first sub-divisions of the thirty-fifth Section of the Bankrupt Act are intended to apply to and to defeat and invalidate what are deemed to be fraudulent preferences to creditors."—James' Bankrupt Law of United States, p. 154.

The fraudulent preferences so referred to must be made within four months of the filing of the petition. (See Bankrupt Act, Section 35.)

The third sub-division of the Section refers to payments, sales, assignments, &c., made within six months before the filing of the petition. In neither case are they absolutely void, because the person to be thereby benefited must have "reasonable cause to believe such person insolvent, and the sale, assignment, &c., made in fraud of the provisions of the Act." (See said thirty-fifth Section.)

The Act, so far from avoiding all sales, assignments, &c., by a party who may afterwards apply for its benefit, regards them as valid, unless, in a Court of Bankruptcy, found to be in violation of the provisions of the law which it administers.

All the proof submitted, in the brief before us, of the proceedings in bankruptcy, is "that H., B. & Co. were adjudicated bankrupts, 27th March, 1868." If the applicant is adjudged a bankrupt on the filing of the petition, which is an act of bankruptcy—for such is the language of the eleventh Section of the said Act—then more than six months had elapsed from the date of the averred assignment before the said H., B. & Co. were adjudged bankrupts. Connected with this inquiry there is a fact in the case which should not be overlooked. The assignment of the very same parties to Pelzer was on April 10, 1867, and yet, although the assignors were afterwards declared bankrupts, Pelzer's assignment does not appear to have been affected by any objection in the Court of Bankruptcy. We are forced, therefore, to conclude that His Honor erred in his instruction to the jury as to the validity of the assignment to the plaintiff, assuming it to have been made.

It is with reluctance that we send the case back. We cannot, however, undertake to say what may have been the conclusion of the jury on the question of discharge, if that point had been submitted by the Court, nor can we say what influence the charge did have as to the validity of the alleged assignment to the plaintiff.

The motion is granted, and a new trial ordered.

*Willard*, A. J., and *Wright*, A. J., concurred.