RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0265p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

BOBBY T. SHEPPARD,

        *Petitioner-Appellant,*

    *v.*

MARGARET BAGLEY, Warden,

        *Respondent-Appellee.*

No. 09-3472

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00493—Gregory L. Frost, District Judge;
Michael R. Merz, Magistrate Judge.

Argued: March 9, 2011

Decided and Filed: September 13, 2011

Before: BATCHELDER, Chief Judge; MERRITT and KETHLEDGE, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Melissa J. Jackson, FEDERAL PUBLIC DEFENDER'S OFFICE,
Columbus, Ohio, for Appellant. Robert E. Prather, OFFICE OF THE OHIO
ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Melissa J.
Jackson, Carol A. Wright, Allen L. Bohnert, FEDERAL PUBLIC DEFENDER'S
OFFICE, Columbus, Ohio, for Appellant. Robert E. Prather, Charles L. Wille, OFFICE
OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

    KETHLEDGE, J., delivered the opinion of the court, in which BATCHELDER,
C. J., joined. BATCHELDER, C. J. (pp. 14–16), delivered a separate concurring
opinion. MERRITT, J. (pp. 17–22), delivered a separate dissenting opinion.

————————

**OPINION**

————————

KETHLEDGE, Circuit Judge.  Sixteen years ago, an Ohio jury convicted Bobby Sheppard of aggravated murder and sentenced him to death.  He now asks us to grant him a writ of habeas corpus ordering the state of Ohio to redo the penalty phase of his trial.  The district court denied Sheppard's petition.  We affirm.

I.

On August 19, 1994, Sheppard walked into a Cincinnati liquor store wearing a mask and carrying a gun.  He was eighteen years old at the time.  With him was his fourteen-year-old accomplice, Antwan Little, who had a t-shirt pulled over his head.  Sheppard grabbed the store's owner, Dennis Willhide, and forced him to the ground.  Willhide did not resist.  Little opened the register, grabbed the cash inside, and ran out the door.  Sheppard lingered for a moment, and then fired a single shot into the back of Willhide's head.  The store's security camera recorded the entire robbery.

Meanwhile, a store employee, Darren Cromwell, escaped out the back door.  He eventually managed to call the police.  The police brought a tracking dog, who followed the robbers' scent to Sheppard's nearby house.  They promptly arrested Sheppard and Little.  After obtaining a warrant, the police searched the house and found numerous loose bills in a kitchen closet and a black mask under a bed.  The next day, the police found the murder weapon and more cash in a bush at the house next door to Sheppard's.

Immediately after being arrested and read his rights, Sheppard exclaimed that he "didn't do a robbery."  Later at the police station, however, he admitted that he had gone to the store and shot Willhide.  At first, he said he acted in self-defense—Sheppard and Little had tried to buy beer, Willhide pulled out something that Sheppard mistook for a gun, and Sheppard shot him.  But Sheppard eventually abandoned that story too and confessed to a version of events similar to the one caught on tape.  He insisted that he

did not intend to shoot Willhide and that he wasn't "in [his] right mind" at the time, but also admitted that he shot Willhide because he did not want Willhide to identify him.

Sheppard was charged with aggravated robbery and murder. He pled not guilty. A jury convicted him as charged. During the penalty-phase trial, Sheppard argued that his crime did not warrant the death penalty because he was paranoid schizophrenic, was only eighteen, and had no significant criminal record. The jury thought otherwise, concluding beyond a reasonable doubt that the aggravating circumstances of Sheppard's crime outweighed any mitigating factors. Thus, the jury recommended the death penalty.

Shortly after reporting that verdict to the court, one of the jurors, Stephen Fox, told a member of the prosecutor's office that he had consulted an outside source, Dr. Helen Jones, during the penalty phase of the trial. The prosecutor immediately brought the matter to the trial court's attention. The court and Sheppard's counsel examined Fox during an *in camera* hearing. Fox said that he had asked Jones for a brief definition of paranoid schizophrenia, but that her answer had played no role in his deliberations. After hearing Fox testify, the court found that Sheppard had suffered no prejudice from Fox's misconduct. The court thereafter sentenced Sheppard to death, as the jury had recommended. Sheppard moved for a new trial, but the court denied the motion.

Sheppard appealed, advancing numerous claims under both state and federal law. The Ohio Supreme Court rejected them all. *State v. Sheppard*, 703 N.E.2d 286 (Ohio 1998). Sheppard also filed a state collateral attack, which was likewise unsuccessful. *State v. Sheppard*, 744 N.E.2d 770 (Ohio 2001) (per curiam).

Sheppard then filed this federal habeas petition. The district court sent the case to a magistrate judge. Over the objections of the Warden, the magistrate held an evidentiary hearing regarding Sheppard's juror-misconduct claim. Numerous witnesses testified at that hearing, including Fox, Jones, and Dr. Jeffrey Smalldon, Sheppard's mental-health expert from his original trial. The district court ultimately concluded that none of Sheppard's claims merited relief and denied the petition.

This appeal followed.

## II.

We review de novo the district court's denial of Sheppard's petition. *Tibbetts v. Bradshaw*, 633 F.3d 436, 441 (6th Cir. 2011). Sheppard filed his federal petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), so that statute governs his case. *See Williams v. Taylor*, 529 U.S. 420, 429 (2000).

## A.

Sheppard first claims that we should grant the writ because Fox consulted an outside source—Dr. Helen Jones—about the definition of paranoid schizophrenia during the penalty phase of his trial. Sheppard presented a similar claim to the Ohio Supreme Court, which rejected it. 703 N.E.2d at 291. A threshold question is whether we review that decision under the standards set forth in 28 U.S.C. § 2254(d). That provision says that we may not grant the writ with respect to a claim "adjudicated on the merits" in state court unless the court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or rested on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

Although Sheppard's claim was adjudicated on the merits in state court, he argues that § 2254(d) does not apply here because he has presented new evidence in support of his claim. In state court, the relevant evidence comprised Fox's testimony during the *in camera* hearing before the trial judge and two affidavits obtained from Jones shortly thereafter. Based on that record, the Ohio courts found that what Jones had told Fox did not influence him and was consistent with the evidence Sheppard presented at trial. Sheppard now contends that he disproved these points at the federal evidentiary hearing. There, Jones testified that she told Fox that schizophrenics were "out of touch with reality" and that the disease was a "communication disorder." According to the testimony of Sheppard's expert, Smalldon, those statements were wrong. And Fox

himself, after extensive cross-examination, finally said that he was "influenced" by Jones's explanation. Because none of this testimony was presented to the Ohio courts, Sheppard argues that we should review his claim de novo rather than under the more deferential standards set forth in § 2254(d).

Sheppard's argument assumes that his new evidence was properly presented under § 2254(e)(2). That section provides in relevant part:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
>> . . .
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* This provision "imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01 (2011). As interpreted by the Supreme Court, a petitioner who was not diligent in developing the factual basis of his claim cannot obtain a federal evidentiary hearing with respect to that claim unless he meets the conditions set forth in § 2254(e)(2)(B). *See Williams*, 529 U.S. at 437. Sheppard does not contend he can meet those conditions, so the question whether his federal evidentiary hearing was permissible under AEDPA depends on whether he was diligent in developing the factual basis for his claim in state court.

He plainly was not. To be diligent, a petitioner must make "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435. Sheppard did not do that here. All of the witnesses he presented in the federal evidentiary hearing were available to Sheppard when his case was still pending in the state trial court seven years before. Fox actually testified then, as noted above; Smalldon was Sheppard's own expert witness; and that Sheppard obtained an affidavit from Jones after the *in camera* hearing and presented it to the trial court shows that she too was available to testify. That Sheppard lacked subpoena power over these

witnesses does not matter, since they were plainly willing to testify without compulsion. In short, Sheppard did virtually nothing to present to the Ohio courts the evidence he presented to the federal courts seven years later.

"[F]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Pinholster*, 131 S. Ct. at 1401. That is precisely the situation we have here. The testimony in Sheppard's federal evidentiary hearing was taken in violation of § 2254(e)(2). We therefore will not consider it. And we further note—contrary to a second assumption underlying Sheppard's argument—that there is no reason to think that testimony given seven years after the relevant events is necessarily more accurate or truthful than testimony given promptly after those events.

We turn to the merits of Sheppard's juror-misconduct claim. Under § 2254(d)(1), we may grant the writ if the Ohio Supreme Court's rejection of this claim was contrary to clearly established Supreme Court precedent. Sheppard presents two arguments as to why it was. First, Sheppard faults the court for not applying the objective standard for juror-misconduct claims that we set out in *Gall v. Parker*, 231 F.3d 265 (6th Cir. 2000). That standard asks whether "a reasonable juror would likely have considered" the extraneous evidence. *Id.* at 335. But that standard was not Supreme Court precedent at the time of Sheppard's direct appeal, nor had this circuit yet announced that standard. That means we cannot grant the writ based on the Ohio Supreme Court's failure to apply it. *See Pinholster*, 131 S. Ct. at 1399. Instead, at the time of the court's decision, this circuit applied four principles for adjudicating juror-misconduct claims. Those principles were: "'(1) when a defendant alleges that an unauthorized contact with a juror has tainted a trial, a hearing must be held; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the [hearing] is not inherently suspect.'" *United States v. Walker*, 1 F.3d 423, 431 (6th Cir. 1993) (quoting *United States v. Zelinka*, 862 F.2d 92, 95-96 (6th Cir. 1988)). The Ohio Supreme Court cited

and applied all of those principles correctly here.  So we cannot grant relief based on Sheppard's first argument in support of this claim.

His second argument is based on the Ohio Supreme Court's observation that, "[u]nder [Ohio] Crim.R. 33(A)(2), juror misconduct must materially affect an accused's substantial rights to justify a new trial."  703 N.E.2d at 290.  But that is merely a statement of the state-law standard for a juror-misconduct claim; and since Sheppard asserted this claim under both state and federal law, the court was entitled to cite both state and federal law in its opinion.  Thus, Sheppard is not entitled to relief under § 2254(d)(1).

Section 2254(d)(2) provides that we may grant the writ if the Ohio Supreme Court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sheppard apparently concedes that the Ohio court's decision was reasonable based on the state-court record, arguing instead that it was unreasonable in light of the evidence presented in the federal proceeding. That argument is contrary to the plain text of (d)(2), which looks only to the evidence presented in the state-court proceeding.  *See Pinholster*, 131 S. Ct. at 1400 n.7.  And, as already explained, we cannot consider the federal-hearing evidence at all.  Sheppard is not entitled to relief on his juror-misconduct claim.

## B.

Sheppard next claims that the state court violated due process during the penalty phase of his trial by excluding evidence regarding his family's history of mental illness. Sheppard sought to introduce medical records for his mother and his Uncle Darryl.  The trial court admitted approximately two pages of records for each relative, which summarized their respective medical conditions.  The court excluded the remainder of the records.  Sheppard now argues that the excluded records were relevant to his mitigation argument, and that he had a constitutional right to present them to the jury.

Although Sheppard included this claim in his brief to the Ohio Supreme Court, the court's opinion did not specifically address it.  Sheppard says that means we review

the claim de novo.  But the Ohio court expressly stated that it was only addressing the "issues that warrant discussion" and "summarily reject[ing]" the rest. 703 N.E.2d at 290. This claim was among the rest; and "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).  So that is the showing Sheppard must make here.

The excluded records for Sheppard's mother merely show that she was obese and depressed, neither of which was a relevant mitigating fact.  Moreover, the excluded records are virtually identical to the records that were admitted.  The exclusion did not violate due process.

Darryl's medical records were relevant, since they show that he suffered from paranoid schizophrenia.  That condition has a genetic component, so the fact that Sheppard's uncle was schizophrenic makes it somewhat more likely that Sheppard is too.

But that does not mean we can grant his petition.  The admitted portion of Darryl's medical records plainly indicated that he suffered from chronic paranoid schizophrenia, including auditory and visual hallucinations.  Moreover, Smalldon testified extensively regarding Darryl's schizophrenia.  Thus, the jury was fully aware that Sheppard's uncle had the condition that Sheppard himself claimed to have.

What the excluded records did say was that Darryl had some violent episodes while in prison. Unlike his proofs with respect to schizophrenia itself, however, Sheppard presented zero scientific evidence that a propensity for violence has some genetic component. Thus, on the record before the state trial court, the excluded records of Darryl's violence were irrelevant to the issues presented in the penalty phase of Sheppard's trial.

Sheppard also contends that the excluded records could have rebutted the prosecution's cross-examination of Smalldon. But the prosecution never denied Darryl's schizophrenia.  Instead, the prosecution challenged Smalldon for relying on anecdotal accounts, provided by Sheppard's mother, of other relatives' mental problems.  The

prosecution merely pointed out that those accounts may have been unreliable. The excluded records would not have defeated that challenge.

Thus, the excluded records were cumulative regarding Darryl's schizophrenia and irrelevant regarding Darryl's violence. Sheppard contends that he had a right to admit them nonetheless, citing the Supreme Court's decisions in *Eddings v. Oklahoma*, 455 U.S. 104 (1982), *Green v. Georgia*, 442 U.S. 95 (1979), and *Tennard v. Dretke*, 542 U.S. 274 (2004). *Tennard* is inapposite here because it was decided after the Ohio Supreme Court decision in this case. *See Pinholster*, 131 S. Ct. at 1399. And we do not think the other two cases should be so broadly read. In *Eddings*, the Court held that a sentencing judge cannot categorically refuse to consider a capital defendant's background and upbringing; and in *Green*, the Court held that a capital defendant cannot be barred from presenting his alibi evidence to a sentencing jury. Both of these cases concerned the exclusion of an entire *category* of relevant mitigating evidence. They do not impose on state courts a constitutional imperative to admit cumulative or irrelevant evidence. (Neither does *Tennard*, for that matter.) And that is what the state court excluded here. This claim too is meritless.

## C.

Sheppard next claims that he is entitled to relief because the prosecutor engaged in "widespread" misconduct during the penalty phase of his trial. Specifically, Sheppard says that the prosecutor improperly criticized Sheppard's choice not to testify, personally disparaged Sheppard's mental-health expert, and encouraged jurors to make their own diagnosis of Sheppard's mental condition from the surveillance video.

The Ohio Supreme Court characterized the prosecutor's comments as "troublesome." 703 N.E.2d at 294. We have no quarrel with that characterization; but what is more important is that the Ohio Supreme Court independently determined whether the aggravating factors in Sheppard's case outweighed the mitigating ones beyond a reasonable doubt. It concluded that they did, and thus affirmed his sentence. *See id.* at 296.

As Sheppard himself concedes, this reweighing of the relevant factors, if properly done, cures any prosecutorial misconduct. *See generally Lundgren v. Mitchell*, 440 F.3d 754, 783 (6th Cir. 2006). Sheppard says that the reweighing was improper here. Specifically, he argues that the court assigned insufficient weight to his youth, which he says was contrary to *Eddings v. Oklahoma*, 455 U.S. 104 (1982). Under *Eddings*, in considering whether to impose a death sentence, a court cannot "refuse to consider, *as a matter of law*, any relevant mitigating evidence"; but the court can find such evidence "wanting as a matter of fact" and discount it accordingly. *See* 455 U.S. at 114 (emphasis in original).

Here, the Ohio Supreme Court determined that Sheppard's age—eighteen at the time of the crime—offered "little mitigation" because he was a "man of full legal age" and an "adult with all the privileges and responsibilities of an adult." *Sheppard*, 703 N.E.2d at 296. That is not a refusal to consider Sheppard's youth "as a matter of law"; it is a decision on how to weigh the factor.

Sheppard contends that it was unreasonable for the court to assign "little" weight to his youth, since he could not have been any younger and still be eligible for the death penalty. But this contention assumes that, for purposes of this factor, youth must be measured strictly by chronological age. The Ohio courts see the factor as more complicated than that. *See, e.g.*, *State v. Slagle*, 605 N.E.2d 916, 931 (Ohio 1992) (collecting cases). That is their prerogative; and that is what the Ohio courts did here. In explaining the grounds for Sheppard's sentence, the trial court noted that he was "certainly not a typical 18 year old" because he had abused drugs, dropped out of school, and planned the robbery and murder for which he was convicted. The Ohio Supreme Court apparently agreed. None of this reasoning is contrary to *Eddings*.

To the extent that Sheppard is complaining about the brevity of the court's discussion of his youth, the U. S. Supreme Court has made clear that Sheppard still must show that the state court's bottom-line determination—here, that Sheppard's youth did not preclude a death sentence—was contrary to clearly established federal law. *See*

*Richter*, 131 S. Ct. at 784.  Sheppard has not made that showing.  The Ohio Supreme Court's reweighing cured whatever misconduct the prosecutor engaged in at trial.

D.

Sheppard next claims that the trial court improperly excused a prospective juror, Joyce Wells.  As an initial matter, the Warden contends that Sheppard defaulted this claim by presenting only a state-law version of it to the Ohio Supreme Court.  In his brief to that court, however, Sheppard said, "[t]he trial court erred in imposing the death sentence because the jury that convicted the appellant and recommended the death sentence was improperly constituted in violation of appellant's right to a fair trial under the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States[.]"  That reference was enough to avoid default, so we proceed to the merits.  *See West v. Bell*, 550 F.3d 542, 557-58 (6th Cir. 2008).

A trial court may exclude a juror for cause if her views on capital punishment would prevent or substantially impair the performance of her duties as a juror in accordance with her instructions and her oath.  *Wainwright v. Witt*, 469 U.S. 412, 424 (1985).  Sheppard contends that Wells displayed no such impairment during voir dire, so the trial court violated his right to an impartial jury by excluding her.  For good reasons, however, we defer to the trial judge's view unless it is "not fairly supported by the record as a whole."  *Gall*, 231 F.3d at 330.  Moreover, since the Ohio Supreme Court summarily rejected this claim as well, AEDPA imposes a second layer of deference here.  *See* § 2254(d)(1); *Richter*, 131 S. Ct. at 784.

The Warden does not need that extra deference to prevail.  Wells said repeatedly that she could not impose the death penalty upon a defendant who repented of his crime.  As a result, the trial judge concluded that she had "set in advance the standards by which she would refuse to impose the death penalty."  Sheppard asserts that this conclusion was wrong because Wells eventually said that, "[i]f one of [the mitigating factors] would be remorse or not, then I could deal with it in that way."  The trial court reasonably interpreted that answer to mean that Wells would still treat repentance, standing alone, as outcome determinative, rather than as one factor in the balancing process that Ohio

law requires.  We have no basis to disturb the trial court's first-hand judgment on this point.

E.

Sheppard next argues that we should consider several claims that he failed to raise on direct appeal.  Sheppard must show cause and prejudice as to these claims because they are procedurally defaulted.  *See Lundgren*, 440 F.3d at 763.  Some of these claims relate to additional comments that the prosecutor made during the penalty phase; but Sheppard cannot prove prejudice as to those claims in light of the Ohio Supreme Court's reweighing.  So these claims fail.

Another omitted claim was that the trial court erroneously excluded certain testimony from his mother and social worker.  But Sheppard cannot show prejudice as to this claim either.  The two witnesses would have told the jury that Sheppard did not deserve the death penalty, that he did not intend to kill Willhide, and that it was unfair to sentence Sheppard to death when his accomplice, Little, only received seven years in prison.  But the testimony these witnesses did give at trial made clear to the jury that they did not think Sheppard should receive the death penalty; and the jury was otherwise fully aware of what Little's sentence was.  There is no reason to think that the jury would have changed course based on the excluded testimony.

Sheppard next argues that his counsel on direct appeal was constitutionally inadequate for failing to raise these claims.  He previously raised this claim in his state collateral attack, and the Ohio Supreme Court rejected it.  744 N.E.2d 770.  The court discussed the relevant *Strickland* standard, and held that Sheppard had not met it.  *See id.* at 771.  For the reasons stated above, that decision was not unreasonable.

F.

Sheppard also argues that the jury instruction during the penalty phase of his trial was contrary to *Beck v. Alabama*, 447 U.S. 625 (1980).  The Supreme Court recently upheld a similar jury instruction to the one given here and in doing so confirmed that

*Beck* does not apply to penalty instructions.  *See Bobby v. Mitts*, 131 S. Ct. 1762 (2011).
So this claim is meritless.

G.

Finally, Sheppard argues that the cumulative effect of these errors rendered his
trial fundamentally unfair.  Post-AEDPA, that claim is not cognizable.  *See Moore v.
Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

*   *   *

The district court's judgment is affirmed.

---

**CONCURRENCE**

---

ALICE M. BATCHELDER, Chief Judge, concurring. I concur with the majority opinion and write separately only to emphasize two points.

**I.     *United States v. Remmer* was abrogated by *Smith v. Phillips***

The dissent begins by stating "the law is clear, the facts are clear and our Court is clearly mistaken in its view that defense counsel were not 'diligent'"; he then asserts that in *Remmer* the Supreme Court established "a clear procedure to deal with this kind of ex parte communication."

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States*, 347 U.S. 227, 229 (1954). The dissent would accordingly place the burden on the prosecutor to show that there was no bias, and bias is presumed absent such a showing.

As the district court recognized, however, *Remmer* was abrogated in part by the Supreme Court in *Smith v. Phillips*, which held that the defendant has the burden to show that there has been *actual* prejudice. 455 U.S. 209, 215-17 (1982) (stating that "[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias"; that *Dennis v. United States*, a pre-*Remmer* case, "rejected [a] claim of implied bias" and held that "[p]reservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury"; and that *Chandler v. Florida*, a post-*Remmer* case, held that

the "appropriate safeguard" against juror bias is the "defendant's right to demonstrate" that the ability of the jury to fairly adjudicate the case was compromised) (internal citations and quotations omitted); *see* R. 131 (Op. & Order) at 62 (following Sixth Circuit precedent that holds that *Smith v. Phillips* changed the *Remmer* rule); *see also United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000) (recognizing that *Smith v. Phillips* changed the *Remmer* rule and placed the burden on the defendant to show actual prejudice from *ex parte* juror communication); *Kowolak v. Scutt*, 712 F. Supp. 2d 657, 691-92 (E.D. Mich. 2010) (same). Given the clear holding of *Smith v. Phillips*—and the recognition by the district court and other 6th Circuit cases that *Smith v. Phillips* changed the *Remmer* rule—it is clear that the district court did not unreasonably apply the applicable Supreme Court precedent.

## II.    *Cullen v. Pinholster* provides an alternative bar to the consideration of "new" evidence

The Supreme Court in *Cullen v. Pinholster* held for the first time that federal *habeas corpus* "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S. Ct. 1388, 1398 (2011). Although the majority opinion does briefly mention that *Cullen v. Pinholster* restricts federal courts to the record considered by the state court in its merits review, I think a more in-depth look at *Pinholster* would be helpful here. In *Pinholster*, the defendant had twice adjudicated state *habeas corpus* petitions based on ineffective assistance of counsel all the way to the state supreme court, and twice the state supreme court denied the petitions on the "substantive" ground that they lacked merit. *Id.* at 1396-97. The defendant filed a writ of *habeas corpus* in federal district court and was granted an evidentiary hearing; he presented two new medical experts who offered new diagnoses of the defendant's mental state. *Id.* at 1397. The district court granted *habeas* relief based on the new evidence and the 9th Circuit affirmed, holding that the new evidence made the state court's application of the *Strickland* standard objectively unreasonable. *Id.* The Supreme Court reversed, reasoning that § 2254(d)(1) is "backward-looking" and thus review under that provision "is limited to the record in existence at that same time i.e., the record before the state court." *Id.* at 1398. The Court further reasoned that "[i]t

would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 1399.

*Pinholster* directly controls the resolution of the juror misconduct ground under § 2254(d)(1). The Ohio Supreme Court considered Sheppard's argument that Juror Fox's *ex parte* communications prejudiced Sheppard's trial and rejected it on the merits, holding that under *Smith v. Phillips* and Ohio law Sheppard had suffered no prejudice from the juror misconduct. *Ohio v. Sheppard*, 703 N.E.2d 286, 290-91 (Ohio 1998). The Ohio Supreme Court was not presented with evidence that Juror Fox had been influenced by his *ex parte* communication, which indeed did not come to light until a later federal district court evidentiary hearing. This Court is limited to those same facts—that Juror Fox was not influenced by his *ex parte* contact—before the state court in its review on the merits. Since even Sheppard does not appear to argue that the state court's analysis was "contrary to" or an "unreasonable application of" established United States Supreme Court precedent based on the facts before it, affirmance of the district court's denial of *habeas* relief on the juror misconduct ground is clearly warranted.

———————

**DISSENT**

———————

MERRITT, Circuit Judge, dissenting.  On the primary issue regarding the Fox-Jones *ex parte* or extra-judicial conversation about "paranoid schizophrenia," the law is clear, the facts are clear and our Court is clearly mistaken in its view that defense counsel were not "diligent" but were derelict or delinquent in pursuing the issue zealously and intelligently.  The fact is that both Fox and Jones told one story about their conversation and its effect at a post-conviction hearing in state court and the opposite story in federal court.  And state law prevented the truth from coming out thereafter in state court so that only the federal forum was available to hear the truth.  My colleagues have rendered the federal court powerless to do justice so that no court is now available to enforce the Constitution.

On the law, in *Parker v. Gladden*, a habeas case arising from a state murder, 385 U.S. 363, 364 (1966), a bailiff, instead of a psychologist, discussed the case *ex parte* with a juror.  The Court outlined the law:

> We believe that the statements of the bailiff to the jurors are controlled by the command of the Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment. It guarantees that "the accused shall enjoy the right to a . . . trial, by an impartial jury . . . [and] be confronted with the witnesses against him. . . ."  As we said in *Turner v. Louisiana*, 379 U.S. 466, 472-473 (1965), "the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."

In *Remmer v. United States*, 347 U.S. 227, 229 (1954), a clear procedure to deal with this kind of *ex parte* communication is set out to eliminate the danger of jury reliance on extra-judicial evidence:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed

presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.[1]

These legal principles strictly forbidding *ex parte* contacts and extra-judicial evidence, like the Fox-Jones telephone conversation, are also strictly enforced in trials in other countries in the Western world. Such unconfronted, uncross-examined statements are recognized as particularly unreliable. As in this country, the reasons to forbid extrinsic information from consideration by the jury also have to do with all of the dangers (perception, sincerity, misunderstanding, etc.) of relying on uncross-examined extra-judicial statements. *See*, *e.g.*, *Farhi v. France*, 48 Eur. Ct. H. R. 34 (2007) (right to a hearing by an impartial jury had been violated under Article 6 (1) of the European Convention on Human Rights by *ex parte* or extra-judicial contacts and

---

[1] I find no language whatever in *Smith v. Phillips*, 455 U.S. 209 (1982), that supports the statement of our concurring colleague that the *Remmer* case is no longer good law. As the D.C. Circuit said in *United States v. Butler*, 822 F.2d 1191, 1195 (1987), the Supreme Court and the Courts of Appeals, except for the Sixth Circuit, are in accord:

> The proper legal standard for evaluating the effect of an alleged juror exposure to extra-judicial information, both sides here seem to agree, is that "[i]rrespective of the source of the alleged taint, it is the burden of the government to demonstrate that the jury was impartial, and that extrinsic information did not contribute to the verdict." Brief for Appellee at 12.*

>> *This traditional approach was laid down in *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). In *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), the Sixth Circuit held that the Supreme Court's subsequent opinion in *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), reinterpreted *Remmer* so as to shift the burden of showing prejudice to the defendant. No other federal appellate court, however, has departed from *Remmer's* statement of the legal standard for evaluating the effect of an improper judicial contact. *See*, *e.g.*, *United States v. Littlefield*, 752 F.2d 1429, 1431-32 (9th Cir. 1985) (criticizing *Pennell*); *Owen v. Duckworth*, 727 F.2d 643, 646 (7th Cir. 1984); *United States v. Webster*, 750 F.2d 307, 338 (7th Cir. 1984); *cert. denied*, 471 U.S. 1106, 105 S.Ct. 2340-41, 85 L.Ed.2d 855-56 (1985); *United States v. Delaney*, 732 F.2d 639, 642 (8th Cir. 1984); *United States v. Hines*, 696 F.2d 722, 730-31 (10th Cir. 1982); *Hobson v. Wilson*, 737 F.2d 1, 47-49 (D.C. Cir. 1984); (civil case); *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *Haley v. Blue Ridge Transfer Co.*, 802 F.2d 1532, 1535 & n.5 (4th Cir. 1986) (civil case) (distinguishing *Phillips*). We think that *Remmer's* allocation of the burden remains the law.

applicant granted a new trial); *Gregory v. United Kingdom*, 25 Eur. Ct. H.R. 577, 578 (1997) (same). That a jury must deliberate in private, free from outside interference, is a principle with deep roots in English common law. The jury should decide the case exclusively on the evidence presented in the course of the trial, otherwise the verdict may be tainted. *See R. v. Pan*, [2010] 2 S.C.R. 344 (Can.).

\*   \*   \*

The facts associated with the Fox-Jones *ex parte* conversation are that on May 18, 1995, the jury returned its death sentence against Sheppard. On May 30, 1995, the trial court conducted an in- chambers hearing when it learned from the prosecution that, during the trial, Fox had called Jones, a psychologist, to discuss the meaning and characteristics of "paranoid schizophrenia," the defendant's main defense against a death sentence. At that hearing, Fox testified that the conversation did not influence him in any way; when asked whether he discussed the psychological testimony with the other jurors, Fox answered, "I may have, but like I said, it was, there were a lot of other things." Thus, at this hearing he testified that his conversation had no effect on his vote for the death penalty and that he "may" have discussed the conversation with other jurors. On motion for a new trial, the state court accepted Fox's testimony that the communication with Jones had no effect or influence on his vote, while recognizing that the *ex parte* conversation was highly improper. The court denied the motion for a new trial, and the Ohio appellate courts accepted and affirmed this ruling on the ground that it had no influence. As will be explained below, under Ohio law this ruling in the appellate courts was final and defense counsel could not attack it collaterally in state court.

When the case came to federal court on Sheppard's request for federal habeas relief, Fox completely changed his no-influence testimony. He testified as follows:

> Q. I don't believe you answered my question. You do agree with me that the information that Ms. Jones gave to you influenced your verdict, is that correct?

> A. I'm sure to some degree, small degree.

Q. So the answer's yes?

A. Yes.

Q. And, again, to use your words, you agree that it contributed to your verdict of death; is that correct?

A. If that's, yeah, if that's what I said.

Q. Well, irrespective whether that's what you said, as you sit here today you agree it contributed to your verdict?

A. Yes, it must have.

(J.A. 602-03.)

Jones, the psychologist, also changed her testimony from her earlier testimony immediately after the death verdict. She testified in state court that she had read the testimony of Sheppard's expert psychiatric witness, Dr. Smalldon, and that what she told Fox about "paranoid schizophrenia" was completely consistent with the expert witness's testimony. At the federal hearing, she testified that this was not true and that she did not know what the expert said in his testimony, nor did she know whether what she said earlier was consistent with Smalldon's testimony. Smalldon then testified at the federal hearing that Jones's statements to Fox in the *ex parte* phone conversation were completely inconsistent with his testimony and that his statements to the jury describing paranoid schizophrenia were quite different from what Jones told Fox. (J.A. 653-57; J.A. 774-88.)

* * *

In deciding the Fox-Jones issue, it appears that our Court has asked a proper question regarding juror Fox's admission in the federal court habeas hearing, which is completely at odds with his previous state testimony: "Whether he [defense counsel] was diligent in developing the factual basis for his claim in state court"? (Maj. Opin., *supra*, p. 5) My colleagues recognize that the constitutional question may turn on this diligence issue because a lack of due diligence in developing the issue in state court may

trigger procedural default.**²**  A lack of due diligence could prevent the federal court from considering the admission that Fox gave in federal court that he was in fact influenced to vote for the death penalty by the *ex parte*, extra-judicial conversation.

Our Court's error is that it gives precisely the wrong answer in this question of whether there was due diligence.  It answers that defense counsel was derelict and lacked diligence in bringing the question forward without explaining how or why it considers post-conviction counsel to be unprofessional in this regard.  The correct answer should be that defense counsel were exceedingly diligent in bringing out this fact that renders the death verdict unconstitutional.  Defense counsel's diligence is demonstrated by continuing to press the point even though counsel was stuck in state court with Fox's statements that he was completely uninfluenced by his conversation with Jones.  This no-influence statement was accepted at all levels in the state court, and Ohio procedural rules prohibited any further evidentiary hearings or development of a factual basis in state court.

Defense counsel was thwarted in state court by an Ohio procedural rule of finality.  Ohio law provides that "relief under R.C. 2953.21 [post-conviction relief] is not available where the defendant has litigated the issue by way of motion for a new trial or upon appeal," *State v. Walden*, 483 N.E.2d 859, 866, 19 Ohio App. 3d 141, 146 (1984) (a criminal case involving jury misconduct).  Without a state forum, defense counsel did not give up, however, and should be commended for diligence, not criticized for raising and cross-examining Fox and Jones in the first federal forum available.  As it happened, only in federal court could defense counsel show the cover up by Fox and Jones of the nature of their *ex parte* conversation.  That is precisely the reason we have federal habeas corpus relief established in Article I, § 9 of the Constitution, the "suspension" of which is expressly forbidden.  There is nothing in any federal statute or case that I can find that relieves a federal habeas court in these circumstances from considering the federal testimony and concluding that the rule of *Parker v. Gladden*,

---

**²**28 U.S.C. § 2254(e)(1)(A) allows a federal evidentiary hearing to consider evidence "discovered through the exercise of due diligence."

*supra*, was violated. A federal habeas court does not have the constitutional authority or discretion to excuse a state from complying with Due Process and Article I, § 9. In the end, this is a rather simple case calling for the issuance of the writ requiring a new trial at the sentencing phase of the case. A few months before *Sheppard* committed this crime, the facts show that he suffered a serious injury to his head that may well have produced the mental condition that led him to change his personality and commit this crime. Had Fox, and perhaps other jurors, not been distracted from the actual expert testimony by the Fox-Jones *ex parte* conversation, the death penalty may not have been imposed.

\*    \*    \*

Beyond and independently of this type of standard legal analytic reasoning, there are deeper constitutional and ethical reasons to keep capital punishment, life or death, from turning purely on the quality — the "due diligence" — of counsel for the prisoner. The failure of counsel should ordinarily be regarded as "cause and prejudice" to overcome procedural problems that would otherwise default lawyer error into death, obliterating the prisoner's right to a constitutionally correct trial. The Supreme Court has put the constitutional "cause and prejudice" standard into the following language:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. . . .

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A lawyer's "lack of diligence" in handling the case — if that is what led to a failure to correct a constitutionally defective trial — meets the constitutional test of "cause and prejudice." And surely no American judges — no matter how much they may favor the death penalty as a matter of retributive justice — would want an individual to be executed as the result of a constitutionally defective trial caused by the prisoner's lawyer.